RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EUGENE LOREN; DANIELLE HAGEMANN,
                *Plaintiffs-Appellants*,

        *v.*

BLUE CROSS & BLUE SHIELD OF MICHIGAN,
                *Defendant-Appellee.*

No. 06-2090

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-74908—Patrick J. Duggan, District Judge.

Argued: July 24, 2007

Decided and Filed: September 20, 2007

Before: COLE and GILMAN, Circuit Judges; MARBLEY, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Stephen F. Wasinger, STEPHEN F. WASINGER PLC, Royal Oak, Michigan, for Appellants. Catherine E. Stetson, HOGAN & HARTSON, Washington, D.C., for Appellee. **ON BRIEF:** Stephen F. Wasinger, STEPHEN F. WASINGER PLC, Royal Oak, Michigan, John H. Eggertsen, EGGERTSEN & ASSOCIATES, Pittsfield Township, Michigan, for Appellants. Catherine E. Stetson, Evan Miller, HOGAN & HARTSON, Washington, D.C., Robert P. Hurlbert, DICKINSON WRIGHT, Bloomfield Hills, Michigan, K. Scott Hamilton, DICKINSON WRIGHT, Detroit, Michigan, for Appellee.

---

**OPINION**

---

ALGENON L. MARBLEY, District Judge. Plaintiff-Appellants Eugene Loren ("Loren") and Danielle Hagemann ("Hagemann") (collectively, "Plaintiffs") appeal the district court's order granting Defendant Blue Cross Blue Shield of Michigan's ("BCBSM") Motion to Dismiss Plaintiffs' claims brought pursuant to Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

Security Act ("ERISA"), codified in 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), respectively.[1] Plaintiffs allege that BCBSM violated its fiduciary duties under ERISA, and they seek to represent a class of all participants and beneficiaries of ERISA self-funded plans for which BCBSM administers claims and/or handles plan assets. In granting BCBSM's Motion to Dismiss, the district court concluded that, although Loren had statutory standing when the complaint was filed, his claims were rendered moot after he withdrew from the coverage administered by BCBSM and, therefore, now lacks an interest in the remedies available to a participant under §§ 1132(a)(2) and 1132(a)(3). In addition, the district court concluded that, even before filing the suit, Hagemann was covered as a beneficiary under a health care option for which BCBSM does not administer claims, and, therefore, she lacks statutory standing to bring claims against BCBSM. Accordingly, the district court dismissed Plaintiffs' complaint for lack of subject matter jurisdiction. Plaintiffs appeal, asserting that they both have statutory and constitutional standing to assert their claims against BCBSM. For the reasons set forth below, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** the case to the district court for further proceedings.

## I. *BACKGROUND*

BCBSM is a health care corporation, organized under the State of Michigan, that administers and processes claims for various ERISA welfare benefit plans, including self-insured (or "self-funded") health benefit plans sponsored and maintained by Ford Motor Company ("Ford") and American Axle & Manufacturing ("Axle"). In a self-insured plan, the employer elects to pay the health care costs of its covered employees using its own funds, rather than paying premiums to an insurer in exchange for the insurer's assumption of the risk to pay the cost of employer-promised heath care. Basically, Ford and Axel act as their own insurance companies with respect to their self-funded benefit plans, accepting the financial risk of coverage and obligation to pay claims using its own funds. Insurance companies such as BCBSM often act as third-party administrators to carry out the daily operations of employers' self-funded plans, since insurance companies already have operations in place to process claims, collect employee premiums, and manage enrollment. In practice, health care providers bill the administrator for the health care services, and the administrator then collects the full payment from the employer, along with a processing fee. BCBSM negotiates rates for hospital services throughout the state, and these rates are reflected in the reimbursement rates and services fees that BCBSM collects from self-insured clients such as Ford and Axle after BCBSM administers their claims.

BCBSM is also the parent company of Blue Care Network ("BCN"), a state-licenced health maintenance organization ("HMO"), which issues its own insurance policies to groups and individuals. BCBSM negotiates hospital reimbursement rates on BCN's behalf, and these rates are factored into the premiums BCN charges to its customer base. Thus, BCBSM has negotiated agreements with various Michigan hospitals with respect to the rates BCN will reimburse the hospitals for the medical services provided to BCN participants and beneficiaries *and* the rates that BCBSM will reimburse the hospitals for the medical services provided to participants and beneficiaries in self-insured plans administered by BCBSM, such as those offered by Ford and Axel.

Plaintiffs claim that in its agreements with Michigan hospitals, BCBSM negotiated rates more favorable to BCN than to the Ford and Axle self-insured plans that it administers. Specifically, Plaintiffs claim that BCBSM struck a deal with hospitals whereby the hospitals agreed to accept lower reimbursement payments from BCN in exchange for BCBSM's promise to pay those hospitals increased amounts for the services provided under the self-insured plans that BCBSM administered, which include the Ford and Axle plans.

---

[1]Loren and Hagemann were joined by one other plaintiff not a party to this appeal.

Ford and Axle sponsor several different ERISA-regulated health benefit coverage alternatives for their employees and retirees, including options administered by BCBSM. Loren is a participant in, and Hagemann a beneficiary of, self-funded heath care plan options sponsored by Ford and Axle, respectively. Significantly, however, Plaintiffs are not covered under the BCBSM-administered coverage options offered by their employers. Loren was covered by the Axle self-funded option administered by BCBSM at the time of the filing, but as of January 1, 2006, Loren no longer receives coverage from the option serviced by BCBSM. Loren, instead, switched to Medicare benefits through another carrier that does not contract with BCBSM for its claims administration. Hagemann has not been a beneficiary of Ford's BCBSM-administered coverage option since March 1, 2000, at which time Hagemann's spouse elected coverage for her under CareChoices, a fully insured HMO offered by Ford as an alternative benefit plan option. Plaintiffs claim that all of the coverage alternatives sponsored by their employers—both the BCBSM-administered and non-BCBSM-administered coverage options—constitute *one* ERISA plan. Specifically, Loren asserts that the coverage that he currently receives is part of the same ERISA plan as the BCBSM-administered option because Axle reports both coverage options under the same ERISA identification number. Similarly, Hagemann asserts that the coverage options offered through CareChoices and BCBSM are part of the same ERISA plan because Ford reports both options under the same ERISA identification number. Conversely, BCBSM asserts that *each* coverage option offered by Axle and Ford is a *separate and distinct* ERISA health care plan. As such, BCBSM argues that Plaintiffs have no standing to bring claims against BCBSM because they are not participants in, or beneficiaries of, an ERISA plan connected to BCBSM.

Plaintiffs allege that BCBSM violated its fiduciary duties under ERISA when it negotiated different rates for BCN and the Ford and Axle self-insured plans. Plaintiffs assert that BCBSM inappropriately increased charges to the self-insured option in which they particpated. Plaintiffs claim that even though they were not covered by the BCBSM-administered options, because their employers operate under single ERISA plans, the alleged increases caused by BCBSM's breach affected the plans as a whole, and Plaintiffs, therefore, had to pay excessive contributions, deductibles, and/or co-payments.

Plaintiffs sought to bring their claims as a class action, individually and on behalf of a class of all ERISA self-insured plans for which BCBSM administers claims, and the respective participants in and beneficiaries of those self-insured plans. Pursuant to 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), Plaintiffs filed an amended class action complaint ("Complaint") on March 2, 2006, asserting violations of the fiduciary duties as described in 29 U.S.C. § 1109. Specifically, Plaintiffs seek declaratory, injunctive and other equitable relief, including: (a) a declaration that BCBSM is a fiduciary under ERISA and breached its fiduciary duties when it obtained more favorable terms for BCN than for the self-funded ERISA plans; (b) an order enjoining BCBSM from entering into or enforcing contracts with hospitals that grant more favorable terms to BCN than to the self-funded ERISA plans; (c) an order for BCBSM to reimburse the self-funded ERISA plans for all excess charges it has imposed on such plans and to reimburse Plaintiffs for all excess contributions they have been required to pay as a result of BCBSM's illegal conduct; (d) an order for BCBSM to account to the self-funded ERISA plans for all plan assets retained by BCBSM for its own benefit and all profits earned through its breach of fiduciary duty; (e) an order for BCBSM to account for all sums due to the self-funded ERISA plans and to place such sums in a constructive trust for distribution to the self-funded ERISA plans; (f) an order to enjoin BCBSM from any further violation of their ERISA fiduciary obligations; and (g) an award of expenses, including costs, attorneys' and experts' fees. BCBSM moved to dismiss Plaintiffs' complaint for, among other reasons, lack of subject matter jurisdiction.

The district court granted BCBSM's motion. With respect to Loren, the court found that although he was covered under Axle's BCBSM-administered option at the time of the filing, because he later switched to a non-BCBSM-administered option, his claims were moot. In essence, the

court concluded without analysis, that the BCBSM-administered coverage and the non-BCBSM-administered coverage to which Loren subscribed, are not part of one Axle ERISA plan, but are, instead, different ERISA plans sponsored by Axle. The court, therefore, found that once Loren switched *plans* (instead of merely switching coverage options) he no longer had an interest in the remedies available under §§ 1132(a)(2) and 1132(a)(3).

As for Hagemann, the court found that she was a beneficiary of CareChoices, a non-BCBSM-administered benefit plan, even before filing the Complaint. Further, the court concluded that CareChoices and the BCBSM-administered coverage options offered by Ford are not part of a single Ford ERISA plan under which various coverage options are available, but are instead, different ERISA plans. The court found, therefore, that Hagemann lacks standing to assert claims against BCBSM because BCBSM does not act as a fiduciary with respect to Hagemann's health plan. Plaintiffs now appeal, asserting that their employers each have only *one* ERISA plan in which they are members, and they are not barred from maintaining suit against BCBSM merely because they elected coverage options other than the BCBSM-administered alternatives.

## II. *ANALYSIS*

### A. *Standard of Review*

A district court's decision to dismiss for lack of subject matter jurisdiction is subject to a de novo standard of review. *Taveras v. Taveraz*, 477 F.3d 767, 771 (6th Cir. 2007).

### B. *Number of ERISA Plans*

Though the main issue is one of standing, the crux of this case lies in the determination of whether the individual coverage options offered by Axle and Ford constitute *one* employee benefit plan for purposes of ERISA, or *multiple* plans. Plaintiffs assert that, assuming statutory standing, both have Article III standing because they each sue to recover as a result of injury to the *single* ERISA plans sponsored by Ford and Axle, respectively, which simply include as one coverage *option*, the plans administered by BCBSM. Defendant maintains that each coverage option offered by Axle and Ford is a *separate* ERISA health care plan, and because Plaintiffs are not members of BCBSM-administered plan, they cannot establish any element of constitutional standing. Therefore, we must first determine whether the multiple coverage options offered by Ford and Axle constitute one ERISA plan or multiple plans.

Determining whether multiple coverage options constitute one plan under ERISA is a case of first impression for this Court. To be sure, there have been numerous cases considering the issue of "what is a plan," but those cases address whether an ERISA plan exists at all—i.e., whether the employee benefits arranged by employers constitute a plan for ERISA purposes, thereby subjecting the administrator to fiduciary duties under ERISA. *See Kolkowski v. Goodrich Corp.*, 448 F.3d 843 (6th Cir. 2006) (determining existence of an ERISA plan); *Hughes v. White*, 467 F. Supp. 2d 791 (S.D. Ohio 2006). Here, there is no doubt about whether there is an ERISA plan. The question is how many.

Because of the paucity of case law on the issue, we will look to administrative interpretation. The only guidance from this source comes from a proposed regulation governing the group health plan portability provisions of the Health Insurance Portability and Accountability Act ("HIPAA"), jointly issued by the Department of Labor and the Department of Health and Human Services. *See* Notice of Proposed Rulemaking for Health Coverage Portability, 69 Fed. Reg. 78800-01 (proposed Dec. 30, 2004) (to be codified at 29 C.F.R. pt. 2590). To address uncertainty regarding whether an individual who changed benefit elections was switching between benefit options under a single plan, or switching from one plan to another (thereby triggering various provisions that apply when an

individual commences or terminates coverage under a group health plan), the proposed regulations clarify that

> *all medical care benefits made available by an employer or employee organization . . . are generally considered to constitute one group health plan* (the default rule). However, the employer or employee organization can establish more than one group health plan if it is clear from the instruments governing the arrangements to provide medical care benefits that the benefits are being provided under separate plans and if the arrangements are operated pursuant to the instruments as separate plans.
>
> . . . . .
>
> These rules provide plan sponsors great flexibility while minimizing the burden of making decisions about how many plans to maintain. For example, many employers may wish to minimize the number of certificates of creditable coverage required to be furnished to continuing employees. Under the default rule, because all health benefits provided by an employer are considered a single group health plan, there is no need to furnish a certificate of creditable coverage when an employee merely switches coverage among the options made available by the employer. This need would arise only if the employer designated separate benefit packages as separate plans *in the plan documents* and only if the benefit packages were also operated pursuant to the plan documents as separate plans.

*Id.* (emphasis added).

The Tenth Circuit is the only circuit to address this issue in the context of ERISA litigation. *See Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996). In *Chiles*, the Tenth Circuit faced the question of whether a particular employer's ERISA benefit plan, interpreted in light of the plan documents, included payment of health care premiums after termination of a long-term disability plan. *Id.* at 1517. As a threshold matter, the *Chiles* court had to decide whether the four plan documents established one ERISA plan or four ERISA plans. *Id.* at 1511. In concluding that these documents created four distinct ERISA plans, the Tenth Circuit started with the assumption that separate plan documents create separate plans. *Id*. The Tenth Circuit concluded that the plaintiffs failed to defeat the presumption that different plan documents create different plans. *Id*. The court found that the plaintiffs did not proffer sufficient evidence to prove that the employer intended there to be only one plan or that it operated the plans as a single plan. *Id.* In reaching its conclusion, the court considered three factors: (1) whether each plan had a different ERISA identification number; (2) whether the language of the plan documents indicated that the employer intended to establish multiple plans; and (3) whether the plans shared the same administrator or trust. *Id*.

Given HIPPA's default rule that all medical benefits offered by an employer are generally considered to be part of one ERISA health plan, and the fact that if an employer intends to create multiple plans it has the ability to do so by filing multiple plan documents, we start with the strong presumption that the filing of only one ERISA plan document indicates that the employer intended to create only one ERISA plan. Thus, the burden is on Defendant to defeat this presumption by establishing through sufficient evidence that these plans were intended to operate as separate plans, or operated as such in practice.

Defendant claims that the district court was correct in concluding that Ford had multiple ERISA plans because finding that Ford had only a single plan comprised of multiple benefit options "would expand the categories of individuals who may sue . . . further than Congress intended." *Loren v. Blue Cross & Blue Shield of Mich.*, No. 05-74908, 2006 WL 2228978, at *7 (E.D. Mich. Aug. 3, 2006). Defendant states that the instruments governing Ford's BCBSM-administered

option and Ford's non-BCBSM-administered option, of which Hagemann is a beneficiary, make clear that they are intended to be separate plans: the former is a self-insured PPO, designed and funded by Ford and administered by BCBSM; the latter is an HMO, designed and administered by CareChoices, which ultimately assumes the payment risk. Defendant asserts that just as there is a third-party administrator agreement between Ford and BCBSM governing BCBSM's role, there is "presumably" a separate contract between Ford and CareChoices governing the insurance coverage CareChoices will provide to Ford employees who select it as an option.

Defendant concedes that Ford uses a single ERISA identification number and filed a single form 5500,[2] but asserts that these plan options have distinct claims processing administrators, different levels of benefits and different funding regimes (e.g., CareChoices, as an HMO, bears the risk to pay the cost of health expenses, whereas BCBSM is a third party administrator for a self-funded plan for which Ford bears the risk to pay the cost of health expenses). Defendant contends that Plaintiffs' argument with respect to Loren fails for the same reasons, and that the coverage options under Axle are separate ERISA plans.

We conclude that Defendant has not overcome the presumption that the employee health benefits offered by an employer constitute a single ERISA plan. In order to defeat this presumption, Ford and Axle must show, through the plan documents, that such benefits are provided and operated under separate plans. The most obvious first step in this regard would be to register multiple ERISA plans by filing multiple plan documents. In this case, Ford and Axle have instead each registered only *one plan* document with one ERISA identification number. The evidence which Defendant proffers does not sufficiently establish that the employers either intended to operate these options as separate plans or actually did so in practice. If the *Chiles* factors were used in this case, two of the factors would favor Plaintiffs: (1) each plan has only one ERISA identification number; and (2) Defendant failed to point to any language in the plan documents that evinced that Ford or Axle's intent was to establish multiple plans. Given that Defendant has not overcome the presumption that filing one plan document establishes only a single ERISA plan, we hold that Ford and Axle each maintain a single ERISA group health plan with multiple benefit options.

## C. *Standing*

Having determined that Ford and Axle each sponsor one ERISA plan, which includes both the BCBSM-administered and non-BCBSM-administered coverage options, we now consider whether Plaintiffs have standing to bring suit against BCBSM. Because "federal courts . . . have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," a plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Thus, even where statutory standing pursuant to ERISA is satisfied, the elements of Article III must be met. *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 199 (2nd Cir. 2005). Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997). As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id*. at 818 (internal quotation marks omitted). "Article III standing . . . enforces the Constitution's case-or-controversy requirement." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). In evaluating a party's standing, this Court must determine whether the plaintiff has alleged "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court

---

[2]A Form 5500 is an annual disclosure document, which most large employers that offer employee benefits plans are required to submit as part of ERISA's overall reporting and disclosure framework. *See* 29 U.S.C. § 1023.

jurisdiction and to justify exercise of the court's remedial powers on *his* behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction. *Cent. States*, 433 F.3d at 198. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citations omitted). Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte. Cent. States*, 433 F.3d at 198. "To satisfy Article III's standing requirements, a plaintiff must show: '(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Cleveland Branch NAACP v. City of Parma*, 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).

Under ERISA, the contours of the requisite injury-in-fact depend on whether Plaintiffs seek monetary or injunctive relief. Plaintiffs in this case seek both forms of relief pursuant to 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), which provide:

(a)     Persons empowered to bring a civil action

A civil action may be brought . . .

(2)     by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;[3]

(3)     by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . . .

### 1. *Section 1132(a)(2)*

Plaintiffs cannot bring suit under § 1132(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of the plan. *See Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (holding that a participant's action brought pursuant to § 1132(a)(2) must seek remedies that provide a "benefit [to] the plan as a whole"); *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1417 (9th Cir. 1991) ("Any recovery for a violation of sections 1109 and 1132(a)(2) must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries."). As this Court explained in *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), although an individual may bring a § 1109 claim via § 1132(a)(2), "ERISA does not permit *recovery* by an individual who claims a breach of fiduciary duty. Instead, § 1109 contemplates that breaches of fiduciary duty injure the

---

[3] 29 U.S.C. § 1109 provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

plan, and, therefore, any recovery under such a theory must go to the plan." *Id.* at 1452-53 (citations omitted). Therefore, Plaintiffs may bring suit under § 1132(a)(2) *on behalf of* their respective plans, but they are not permitted to *recover* individually, as all relief must go to the benefit of the ERISA plans themselves.

Here, Plaintiffs claim that BCBSM charged the Axle and Ford too much for hospital services (to offset the lower amount BCN paid for hospital services), and this caused Axle's and Ford's ERISA plans to demand higher deductibles, co-payments, and/or contributions from participants. Plaintiffs claim that they have "incurred greater costs than they would otherwise have incurred if BCBSM had not violated its fiduciary duties under ERISA." Plaintiff Loren states that he made "contributions" to the Axle Plan and that the level of his contributions "probably would have been less had BCBSM not engaged in the conduct" set forth in the Complaint. Hagemann offers no similar statement. This "injury" is neither concrete nor particularized, and is instead, arguably conjectural and hypothetical. *Friends of the Earth, Inc*., 528 U.S. at 180-81. Even having determined that Plaintiffs were each part of one ERISA plan, individual injury would only be possible if Plaintiffs paid percentage contributions instead of the usual flat-rate co-payment or deductible, and this assumes that Ford and Axle would pass on any increase in reimbursements or administrative fees that may have resulted from BCBSM's alleged wrongful negotiations. *Cent. States*, 433 F.3d at 202-03 ("[S]uch an increase in cost would in all probability not affect [plaintiffs] absent a demonstration that they purchased drugs based upon percentage coinsurance payments or some other demonstration of individualized harm.").

Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing. *See Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006) ("[Plaintiffs assert that] ERISA plan beneficiaries may bring suits on behalf of the plan in a representative capacity. We have no quarrel with this proposition—so long as plaintiffs otherwise meet the requirements for Article III standing."); *Cent. States*, 433 F.3d at 200 ("[A]n ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on behalf of a Plan."); *Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002) (finding no constitutional standing where the "loss did not cause actual injury to plaintiff's interests in the plan" and determining that the "limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan").

Because Plaintiffs' alleged injury is too speculative to establish constitutional standing, we **AFFIRM** the district court's decision to dismiss Plaintiffs' complaint with respect to the claims asserted pursuant to § 1132(a)(2).

## 2. *Section 1132(a)(3)*

Although a plaintiff is limited to bringing suit on behalf of his or her ERISA plan when asserting a § 1132(a)(2) claim, participants and beneficiaries "can also sue for breaches of fiduciary duty that harm them as individuals." *Smith v. Provident Bank*, 170 F.3d 609, 616 n.3 (6th Cir. 1999) (citing *Allinder v. Inter-City Prods. Corp*., 152 F.3d 544, 551 (6th Cir. 1998) ("[Section] 1132(a)(3) is broad enough to cover individual relief for breach of a fiduciary obligation. Accordingly, individual plan participants can now bring suit under § 1132(a)(3) in their individual capacity." (internal citations and quotation marks omitted))). In addition, in *Helfrich*, this Court held that ERISA does not permit an individual beneficiary, appropriately bringing suit under § 1132(a)(3), to claim for himself money damages from plan fiduciaries.

> Confronted with this obstacle to recovery of his loss, [Plaintiff] denominated his requested relief as "restitution" [which is permitted in equity under § 1132(a)(3),]

while measuring that relief with reference to his losses rather than [Defendant's] gains. That measure is the hallmark of money damages. Because the Supreme Court has specifically disallowed money damages as "appropriate equitable relief" under [§ 1132(a)(3)], the district court's decision to deny [Defendant's] motion to dismiss is reversed . . . .

*Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 483 (6th Cir. 2001).

Therefore, Plaintiffs may bring suit in their individual capacities under § 1132(a)(3) for injunctive or other appropriate equitable relief, but not for monetary damages.

Although Plaintiffs cannot bring action under § 1132(a)(2) without establishing an injury-in-fact, courts have recognized that a plan participant or beneficiary may have Article III standing to obtain injunctive relief, pursuant to § 1132(a)(3), related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm. *Cent. States*, 433 F.3d at 199 (citing *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003)). The *Horvath* Court explained:

Here, the disclosure requirements and fiduciary duties contained in ERISA create in [plaintiff] certain rights, including the rights to receive particular information and to have [defendant] act in a fiduciary capacity. Thus, [plaintiff] need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that [defendant] satisfy its statutorily-created disclosure or fiduciary responsibilities. *See Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1148 (3d Cir. 1993) (finding "ERISA does not require that harm be shown before a plan participant is entitled to an injunction ordering the plan administrator to comply with ERISA's reporting and disclosure requirements").

*Horvath*, 333 F.3d at 456.

Therefore, Plaintiffs need not demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3); they may allege only violation of the fiduciary duty owed to them as a participant in and beneficiary of their respective ERISA plans. Plaintiffs claim that BCBSM breached its fiduciary duty with respect to the Ford and Axle plans to which Plaintiffs belong. This is sufficient to establish injury-in-fact for purposes of constitutional standing under § 1132(a)(3).

Further, Plaintiffs have sufficiently alleged that BCBSM caused the injury they complain of in this case—specifically, breach of fiduciary duty by negotiating more favorable rates for BCN at the expense of the Ford and Axle plans administered by BCBSM. Finally, because we have determined that Ford and Axle sponsor single ERISA plans, any restitution of ill-gotten gains and other equitable relief available under § 1132(a)(3) would be distributed to the single ERISA plans in which Plaintiffs participate. Accordingly, we conclude that Plaintiffs have Article III standing to sue under § 1132(a)(3) for breach of fiduciary duty. We, therefore, **REVERSE** the district court's dismissal with respect to Plaintiffs' claims for injunctive relief under § 1132(a)(3) and **REMAND** for further proceedings.

Based on the foregoing, we need not reach the additional issue raised on appeal by BCBSM of whether it acted in a fiduciary capacity when it engaged in the allegedly wrongful negotiations of reimbursement rates. This question was not analyzed by the district court, and it would most appropriately be addressed there first, with the benefit of additional discovery.

## III. *CONCLUSION*

For the forgoing reasons, we **AFFIRM in part** and **REVERSE and REMAND in part**.