**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 3, 2011

No. 10-50353

Lyle W. Cayce
Clerk

DONALD O. BOOS, on behalf of himself and all other persons similarly situated; RAYMOND D. JOHNSON, on behalf of himself and all other persons similarly situated; WANDA N. MYERS, on behalf of herself and all other persons similarly situated,

Plaintiffs – Appellants

v.

AT&T, INCORPORATED; BELLSOUTH CORPORATION; BELLSOUTH TELEPHONE CONCESSION PLAN,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas

Before GARZA, STEWART, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Donald Boos, Raymond Johnson, and Wanda Myers, representing themselves and those similarly situated (collectively, "Plaintiffs"), brought an enforcement suit against AT&T, Incorporated ("AT&T"), BellSouth Corporation ("BellSouth") and the BellSouth Telephone Concession Plan (collectively, "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Plaintiffs assert that Defendants' practice of reimbursing those retirees who live outside of the Defendants' service area for

No. 10-50353

their telephone expenses constitutes a pension plan and that Defendants have failed to follow ERISA regulations for pension plans. The district court granted summary judgment to Defendants, concluding that Defendants' practice of offering discounted telephone services to employees and retirees ("Concession") is not a pension plan in whole or in part. For the following reasons, we AFFIRM the judgment of the district court.

## I. Background

Since at least the 1920s, Bell[1] has offered its employees and retirees discounts for its telephone services. By 1982, Bell had extended Concession to out-of-region ("OOR") employees and retirees who, because they lived outside of Bell's service area, were unable to benefit from the discount. For those OOR beneficiaries, Bell would reimburse the beneficiary for telephone services provided by the beneficiary's local telephone company.

In 1984, BellSouth was created pursuant to a court-ordered divestiture which divided Bell into seven separate regional operating companies. BellSouth continued Bell's practice of offering Concession to in-region and OOR employees and retirees. BellSouth originally required all employees and retirees to seek reimbursement for Concession benefits. Soon thereafter, BellSouth began to deduct in-region discounts directly from the beneficiaries' bills and, consequently, to administer the OOR benefits separately. In 1997, BellSouth began to outsource the administration of Concession for OOR retirees.

Since April 1, 1985, the basic structure of Concession has remained unchanged. All employees with six months, but less than thirty years, of service receive a 40% discount for local services and reimbursement of up to $25 for

---

[1] In 1984, Atlantic Telephone and Telegraph was divided into seven separate regional telephone operating companies by court order. For purposes of clarity, we will refer to the pre-divestiture company as Bell to distinguish it from the defendant AT&T, Inc., which was formed by the merger of SBC Communications, Inc. (formerly Southwestern Bell) and the post-divestiture AT&T Corporation.

intraLATA calls.[2] Employees with thirty or more years of service and all retirees receive a 100% discount for basic local service, 40% discount for optional services, and a reimbursement of up to $50 for intraLATA calls. In 1996, BellSouth revised Concession so that any employee hired after April 1, 1996, is ineligible for the OOR Concession, but all employees and retirees hired before that date would continue to be eligible for the OOR Concession.

In 2006, BellSouth merged with AT&T. Following the merger, BellSouth employees and retirees have continued to receive Concession pursuant to BellSouth's pre-merger policies.

Plaintiffs brought this suit against Defendants in 2007, alleging that Concession is a defined benefit pension plan as defined by ERISA and that Defendants failed to meet ERISA's requirements for such plans, including funding, vesting, and disclosure regulations. The parties filed cross-motions for summary judgment as to whether Concession is a pension plan because it "provides retirement income." *See* 29 U.S.C. § 1002(2)(A). Defendants also sought a declaration that Concession does not result from the deferral of income. *See id*. The district court granted summary judgment to Defendants on both issues and held that Concession is not a pension plan. Plaintiffs timely appealed.

**II. Analysis**

This circuit reviews grants of summary judgment *de novo*, applying the same standards as the district court. *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009). In reviewing a grant of summary judgment, the court will affirm only if there is no dispute of material fact, and the movant is entitled to judgment as a matter of law. *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir. 1995). The court

---

[2] IntraLATA calls are commonly known as "local long distance."

resolves all doubts and makes all reasonable inferences in favor of the nonmovant. *Swanson*, 586 F.3d at 1018. No genuine issue of material fact exists if the evidence is such that no reasonable factfinder could find for the nonmovant. *Id*.

"ERISA does not regulate all benefits paid by an employer but only those paid pursuant to an 'employee benefit plan.'" *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 344 (5th Cir. 2003); *see also Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574 (5th Cir. 1980) ("Congress did not, however, attempt to control . . . every promise made to employees."). An employee benefit plan is a plan which is an employee welfare benefit plan ("welfare plan") or an employee pension benefit plan ("pension plan") or both. 29 U.S.C. § 1002(3). The parties agree that Concession is not a welfare plan. Therefore, the only question before us is whether Concession, in part or in whole, is a pension plan.

As defined by ERISA, a pension plan is:

> any plan, fund or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan fund or program (i) provide[s] retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

*Id*. at § 1002(2)(A); *see also Murphy*, 611 F.2d at 575. Pension plans are further divided into defined contribution plans and defined benefit plans. *See* 29 U.S.C. § 1002 (34), (35). Boos maintains that the OOR Retiree Concession is a defined benefit plan, which is essentially any pension plan other than an individual account plan. *Id*. at § 1002(35).

Although welfare plans and pension plans are both covered by ERISA, welfare plans are less heavily regulated than pension plans. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (noting that ERISA establishes minimum participation, vesting, and funding requirements for pension plans, but not welfare plans). Plaintiffs' Complaint alleges that BellSouth has

maintained Concession as a pension plan without meeting the funding, vesting, and disclosure requirements that ERISA requires of such plans.

As discussed above, Concession consists of discounted telephone services for Defendants' employees and retirees who live in-region, and reimbursement in the same amount for those services for OOR beneficiaries. As we noted in *Musmeci*, one important aspect of whether a plan is a pension plan is whether the plan provides income as defined by the Internal Revenue Code ("IRC"). 332 F.3d at 345 ("[W]e believe that the interconnection between ERISA and the IRC reflects an intent to use common terminology."). Where a plan does not provide income, it cannot be a pension plan. *See id.* at 347 (noting that courts have found that benefits were not a pension plan where the benefits offered were "no-additional-cost" services).

For those retirees who live within the Defendants' service area, Concession is not income, but rather a "no additional cost" service. *See* 26 U.S.C. § 132(a)(1) (excluding no-additional-cost services from gross income); Treas Reg. § 1.132-2(a)(2) (stating that services eligible for treatment as no-additional-cost services "include excess capacity services such as . . . telephone services"). Plaintiffs concede that for these in-region retirees, Concession is not a pension plan; they contend, however, that because the OOR retirees receive the benefit as taxable income, Concession must be treated as a pension plan, in whole or in part. Plaintiffs present four arguments in support of this assertion: (1) Concession for OOR retirees is a separate plan from Concession as a whole because it is separately administered; (2) even if Concession is a single plan, it is a pension plan "to the extent" that its beneficiaries receive taxable income; (3) Concession, when viewed as a whole, provides retirement income; and (4) Concession, when viewed as a whole, results from the deferral of income. We address each in turn.

The district court, in determining whether Concession is a pension plan, determined that it "must look at how [Concession] was designed to treat and how

No. 10-50353

it does treat *all retirees*, not just out-of-region retirees." Plaintiffs assert that the district court's conclusion was erroneous because Concession for OOR retirees is a separate plan from the in-region retiree plan, or alternatively, if the Concession is one plan as to all retirees, the court should determine the "extent" to which it may qualify as a pension plan.

The district court held that Concession is one plan as to in-region and OOR retirees because the benefit was the same for both groups and because the groups were not discrete, immutable groups. Plaintiffs claim that the district court erred and that the OOR Retiree Concession should be viewed in isolation because it is separately administered. *See Stoffells v. SBC Commc'ns, Inc.*, 555 F. Supp. 2d 745, 757 (W.D. Tex. 2008) ("The Court finds as a matter of fact that [the OOR Retiree] Concession was structured separately from other segments of the telephone discount and should be analyzed as a distinct plan."), *vacated on reconsideration*, No. SA-05-CA-233-XR (Jan. 14, 2011).

We hold that the district court did not err in holding that Concession is one plan, at least as it regards all retirees.[3] Whether a benefit plan is a single plan or multiple plans is determined by employer intent. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007) ("The evidence . . . does not sufficiently establish that the employers either intended to operate these options as separate plans or actually did so in practice."); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) ("We conclude that [the employer] intended to create separate plans."); *cf. House v. Am. United Life Ins. Co.*, 499 F.3d 443, 452 (5th Cir. 2007) ("The policy contemplates and establishes a single plan."). Although intent is often a question of fact, here, where the underlying facts are undisputed, the question is one of law. *Cf. House*, 499 F.3d at 448 ("We have frequently stated that the existence of an ERISA plan within the statutory

---

[3] Defendants assert that Concession is one plan as to all employees and retirees. Such a finding is not required by our disposition of this case, so we reserve the issue.

6

No. 10-50353

definition is a question of fact. However, where the factual circumstances are established as a matter of law or undisputed, we have treated the question as one of law to be reviewed de novo.") (internal citations omitted).

Courts consider many different factors to determine whether an employer intended a benefit program to consist of one or multiple plans.  One important factor is whether the plan is located in one or multiple plan documents and whether those documents show an intent to create a single plan or multiple plans. *See Loren*, 505 F.3d at 605 ("[W]e start with the strong presumption that the filing of only one ERISA plan document indicates that the employer intended to create only one ERISA plan."); *Chiles*, 95 F.3d at 1511 ("[I]t is clear from the language of the plan documents that the company intended to establish four different plans.").  Courts may also consider whether the benefits are separately funded.  *Nowell v. Cent. Serv. Ass'n*, 106 F. Supp. 2d 888, 894 (S.D. Miss. 2000) ("'Plan' means a single plan . . . , as opposed to a number of plans, if, on an ongoing basis, all of the plan assets are available to pay benefits to employees who are covered by the plan and their beneficiaries.");  *cf. Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999) ("The act of amending a pre-existing plan cannot as a matter of law create two *de facto* plans if the obligations . . . continue to draw from the same single, unsegregated pool or fund of assets.").  Courts also consider, as the district court did here, whether the offered benefit is the same. *See House*, 499 F.3d at 452 (noting "the anomaly of requiring some insureds to pursue benefits under state law while requiring others covered by the identical policy to proceed under ERISA").   Separate administration may also be considered.  *See Loren*, 505 F.3d at 605 (considering "whether the plans shared the same administrator or trust"); *cf. Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 440 (5th Cir. 2006) ("[W]e consider whether [an employer] was engaged in an ongoing administrative scheme to determine whether a plan existed.").

7

No. 10-50353

In this case, Defendants established both in-region and OOR Concession benefits with the same plan documents. Furthermore, those documents refer to Concession as a single policy.[4] The plan offered the same benefits to both groups.[5] Furthermore, both in-region and OOR benefits are drawn from Defendants' general funds. We also agree with the district court that the fact that retirees could move between the in-region and OOR discount is significant. Indeed, the in-region and OOR discount appear to be two parts of a distinct whole. For those retirees who receive Concession, each retiree receives either the in-region discount or OOR reimbursement, there are no retirees who qualify for both benefits or neither benefit; nor does a change from one form of the benefit to another require any qualification. Thus, although the plan for OOR retirees was administered separately from that of in-region retirees, we find that there is no genuine issue of material fact that Concession is a single plan as it relates to all retirees. *See Loren*, 505 F.3d at 606 (determining that separate administration did not create a genuine issue of material fact).

Alternatively, Plaintiffs argue that even if Concession is a single plan, the district court erred in reviewing the plan as a whole, because ERISA makes a plan a pension plan "to the extent" that it provides retirement income or results

---

[4] For example, each of the plan documents begin with a statement that it is BellSouth's *policy* to provide discounted telephone services. Plaintiffs point to other documents which refer to Concession as consisting of numerous plans. Neither of these documents show that Defendants considered Concession to be different for OOR retirees than in-region retirees apart from their separate administration, which we hold does not establish that Concession was separate plans.

[5] Plaintiffs assert that the reimbursement for telephone services that OOR retirees receive is a different benefit than the discounted telephone services that in-region retirees receive. We disagree. Concession is structured so that an OOR retiree may only receive reimbursement for qualified telephone expenses. The retiree must submit a bill proving the eligible expenses, and where two Concession-eligible retirees live at the same residence, only one may receive the benefits. The fact that the discount is provide as a reimbursement to OOR retirees does not change the character of the benefit. Indeed, in the early stages of BellSouth's administration of Concession, both in-region and OOR retirees received the discount as reimbursement.

8

from a deferral of income. *See* 29 U.S.C. § 1002(2)(A). Courts have consistently read this language as expressing Congress's intent to avoid subjecting those benefits which under ERISA are welfare plan benefits to the more stringent requirements of pension plan benefits simply because the welfare benefits are included within a pension plan. *See Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 193-94 (2d Cir. 2000) ("Under the plain language of the statute, 'to the extent' that Nestle's Pension Plan provides benefits that are triggered by disability, that portion of the plan is a welfare plan under § 1002(1)."); *McBarron v. S & T Indus., Inc.*, 771 F.2d 94, 98 (6th Cir. 1985) ("In our view, the words 'to the extent that' rather than 'solely' clearly indicate that Congress intended to allow any plan or part of a plan having disability provisions to be considered an 'employee welfare benefit plan,' and thus be exempt from [ERISA's pension plan regulations]."); *see also Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 925 (5th Cir. 1995) ("ERISA's vesting, accrual, and nonforfeiture provisions do not apply to an employee welfare benefit plan.").

Plaintiffs provide no authority for the proposition that courts should parse a single benefit to determine whether some part of that benefit is arguably a pension plan. Indeed, *Murphy* implicitly rejects such an idea. There, we noted that "payments to some employees or their heirs are likely to continue after the employee has retired or ceased work because of death or disability," but held that the benefit was not a pension plan because "the primary thrust of the plan is to reward employees during their active years." *Murphy*, 611 F.2d at 574. More recently, we declined to interpret ERISA in such a way that plan beneficiaries "could assert identical claims relating to identical terms in the identical certificates of insurance . . . and governed by a single subscription agreement, but [some beneficiaries'] claims would be governed by state law and [other beneficiaries'] claims would be governed by ERISA," determining that such a result would be "out of keeping with Congress's intent of achieving

uniformity in the law governing employment benefits." *House*, 499 F.3d at 452. The district court did not err by refusing to examine the OOR Retiree Concession in isolation.

Plaintiffs next assert that even when Concession is viewed as to all retirees, it is a pension plan under ERISA because it "provides retirement income." As we have noted, this definition is:

> not to be read as an elastic girdle that can be stretched to cover any content that can conceivably fit within its reach. Any outright conveyance of property to an employee might result in some payment to him after retirement. The words "provides retirement income" patently refer only to *plans designed for the purpose of paying retirement income* whether as a result of their express terms or surrounding circumstances.

*Murphy*, 611 F.2d at 575 (emphasis added). As such, we held that an oil company's practice of giving royalty interests as bonuses was not an ERISA plan. *Id.* Although under the bonus plan, "payments to some employees or their heirs are likely to continue after the employee has retired," we noted that "the primary thrust of the plan [was] to reward employees during their active years." *Id.* at 574.

We conclude that although Concession does provide income to some retirees, such income is incidental to the benefit. The "primary thrust" of Concession is to provide retirees with discounted phone service, which a vast majority of the beneficiaries receive as a "no-additional-cost" service. In the interests of parity and good will, BellSouth and AT&T continued Bell's policy of providing Concession to those retirees who live outside of their service area as well as those within. We find it significant that a retiree's status as either an in-region or OOR beneficiary, and thus whether he receives income from Concession, is not immutable, but is purely a function of whether he lives in the Defendants' service area. In short, no beneficiary of Concession has a certainty of income from it. This case is, therefore, unlike *Musmeci*, where the benefit was

undeniably income to all of its recipients. Due to these contingencies, we cannot conclude that Concession, when viewed as to all retirees, was "designed for the purpose of paying retirement income."

Finally, Plaintiffs argue that Concession, when viewed as to all retirees, results from a deferral of income. Under *Musmeci*, "income" has the same meaning under ERISA as the IRC. 332 F.3d at 345. As we have stated above, for OOR retirees, Concession undoubtedly produces income.

To show that Concession results from deferred income, Plaintiffs must show that they forewent income at some point in exchange for receiving income from Concession at a later date, which they have failed to do. For in-region retirees, Concession cannot be considered deferred income, because it supplies them *no* income. Neither is Concession deferred income for OOR retirees. Concession does not provide OOR retirees with a fixed income; rather, they are reimbursed for qualified telephone expenses. Therefore, an OOR retiree has no right to income from Concession until after he has purchased Concession-eligible services from his local telephone company. *See Rathbun v. Qwest Commc'ns Int'l, Inc.*, 458 F. Supp. 2d 1238, 1248 (D. Colo. 2006) ("[T]he program reimbursements cannot be characterized as deferred income because employees and retirees have no entitlement to any funds until they have expended the reimbursable amount on telephone services."); *cf. Modzelewski v. Resolution Trust Corp.*, 14 F.3d 1374, 1378 (9th Cir. 1994) ("[A] right is vested when the employee holding the right is entitled to claim immediate payment."). Therefore, similarly to the royalty interests in *Murphy*, the nature of the OOR reimbursement is such that the beneficiaries are paid over time, as the right to the income is realized. *Compare Murphy*, 611 F.2d at 575 ("It is an inherent characteristic of the royalty interest that it is paid on oil and gas production whenever that is realized.").

No. 10-50353

Plaintiffs argue that the payments "were provided to employees 'as a result of their prior service with their employer'"; however, a plan does not result in deferred income merely because "some payments under [the] plan may be made after an employee has retired or left the company." *Murphy*, 611 F.2d at 575. Indeed, the royalty payments in *Murphy*, which we held were not deferred income, were similarly "to reward employees for their service." *Id*. at 574. Plaintiffs also received a similar telephone benefit service while they were employed. Plaintiffs' evidence that they received Concession as a result of their employment therefore fails to establish a genuine issue of material fact that Concession results in a deferral of income.

We therefore hold that Concession does not result in a deferral of income.

**III. Conclusion**

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Defendants.