**PENSION BENEFIT GUARANTY CORPORATION, on its own behalf and on behalf of APL/NVF Consolidated Pension Plan, Plaintiff–Appellee,**

v.

**EVANS TEMPCON, INC. and State of Michigan, Defendants,**

**Brenda Nestor, Appellant.**

No. 15–1388.

United States Court of Appeals, Sixth Circuit.

Nov. 2, 2015.

Before: BATCHELDER, MOORE, and ROGERS, Circuit Judges.

## OPINION

KAREN NELSON MOORE, Circuit Judge.

Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA") created an insurance program for the termination of defined-benefit pension plans. Pension Benefit Guaranty Corporation ("PBGC") is the government agency that administers the insurance program. In April 2013, PBGC received notice that the Estate of Victor Posner ("the Estate") had failed to make required contributions to the APL/NVF Consolidated Pension Plan ("the Plan"). PBGC filed notices of a federal tax lien against the Estate and its entities, including a defendant in the case below—Evans Tempcon, Inc. After receiving notice of the lien, Evans Tempcon transferred $1.8 million to the other entities as well as to individuals associated

with the Estate. PBGC then brought a foreclosure action against Evans Tempcon. Shortly thereafter, PBGC and Evans Tempcon entered into a joint stipulation restraining Evans Tempcon from transferring any additional assets without PBGC's approval. When PBGC learned that Evans Tempcon had violated the stipulation, it filed a motion to appoint a receiver, which the district court granted. Brenda Nestor, the personal representative of the Estate and the president of Evans Tempcon, appealed. Because the district court did not abuse its discretion in granting PBGC's motion, we **AFFIRM**.

## I. BACKGROUND

### A. Factual Background

The Estate has been in probate since the 2002 death of Victor Posner. *See* R. 36–1 (Nestor Decl. ¶ 2) (Page ID # 822). It owns approximately forty businesses. R. 28–12 (Ex. 5 to Nestor Dep., Corporate Structure) (Page ID # 537). Nearly all of these businesses involve the development and sale of real estate, and, according to PBGC, nearly all are illiquid. *See id.*; R. 28–12 (Ex. 7 to Nestor Dep., Estate Holdings) (Page ID # 539–40); *see also* R. 28–12 (Nestor Dep. at 93–99) (Page ID # 337–43). The Estate also owns Evans Tempcon, a company that manufactures HVAC products for recreational vehicles and trucks in Grand Rapids, Michigan. R. 28–3 (Turner Decl. ¶ 7) (Page ID # 177); R. 28–12 (Nestor Dep. at 107, 124) (Page ID # 351, 368). Unlike the other businesses owned by the Estate, Evans Tempcon has a regular cash flow and its own payroll. *See* R. 28–12 (Nestor Dep. at 93–99) (Page ID # 337–43). Nestor, the former personal representative of the Estate,[1] serves as Evans Tempcon's president. *Id.* at 12, 107 (Page ID # 256, 351).

The Estate is the contributing sponsor of the Plan. R. 28–4 (Notice of Failure to Make Required Contributions) (Page ID # 182). Because the Estate has full ownership of the approximately forty businesses, including Evans Tempcon, they are all considered part of the same controlled group. R. 28–3 (Turner Decl. ¶¶ 6–8) (Page ID # 177); *see also* R. 28–12 (Ex. 8 to Nestor Dep., Notice of Failure to Make Required Contributions with Attachment) (Page ID # 541–47). Under ERISA, the contributing sponsor and each member of its controlled group are jointly and severally liable for contributions owed to the pension plan as well as for insurance premiums (including those that arise upon termination) and unfunded benefit liabilities. 29 U.S.C. §§ 1082(b)(1)-(2), 1307(e)(2), 1362(a)-(b).

On April 5, 2013, PBGC received notice that the Estate had failed to make the required contributions to the Plan for 2010 and the first quarterly contribution to the Plan for 2011. R. 283 (Turner Decl. ¶ 9) (Page ID # 178); R. 28–4 (Notice of Failure to Make Required Contributions) (Page ID # 182). PBGC filed notices of a federal tax lien for $10,128,398 against the Estate and its entities, including Evans Tempcon. R. 28–3 (Turner Decl. ¶¶ 10–13, 16) (Page ID # 178, 179); R. 28–5 (Notices of Federal Lien at 7, 15) (Page ID # 193, 201). Although Evans Tempcon received notice of the lien, and although Nestor knew that the company's fair market value (in the absence of any liens) was $10 million, Evans Tempcon transferred $1.8 million to the Estate and its entities as well as to Nestor and Evans Tempcon's chief operating officer, Homauon Noroozi. R. 28–

---

1. Although Nestor was the Estate's personal representative when she filed this appeal, the probate court removed her as personal representative and appointed a successor on April 30, 2015. Appellee Br. at 3; Appellant Reply Br. at 6.

6 (Emails re: Victor Posner Estate) (Page ID # 203); R. 28–12 (Nestor Dep. at 251) (Page ID # 495); R. 28–25 (Summary of Evans Tempcon Transfers) (Page ID # 639). The Estate has since missed additional contributions, and the Plan now has a perfected lien against the Estate, its entities, and Evans Tempcon for over $17 million. R. 28–3 (Turner Decl. ¶ 19) (Page ID # 179).

## B. Procedural Background

On July 22, 2014, PBGC brought a foreclosure action against Evans Tempcon.[2] R. 1 (Compl.) (Page ID # 1). Evans Tempcon did not answer the complaint, and instead expressed an interest in settlement. *See* R. 12 (First Unopposed Mot. for Extension of Time ¶ 2) (Page ID # 73). In order to facilitate negotiations, PBGC filed two motions on Evans Tempcon's behalf for extensions of time to answer the complaint. *Id.*; R. 14 (Second Unopposed Mot. for Extension of Time) (Page ID # 78). On October 6, 2014, PBGC and Evans Tempcon entered into a stipulation giving Evans Tempcon an additional thirty days to answer or otherwise plead and restraining it from transferring any of its property outside of the ordinary course of business without PBGC's approval. R. 16 (Proposed Stipulation) (Page ID # 83). The stipulation stated,

> Evans shall not transfer any Evans Property outside of the ordinary course of business. This prohibition applies, but is not limited to, any and all transfers of Evans Property to or for the benefit of any of Evans' affiliate, the Estate of Victor Posner, or to the Personal Representative of the Estate of Victor Posner in either her professional or individual capacity, without PBGC's prior written consent.... The term

"Evans affiliate" in this Stipulation and Order (solely for the purpose of this Stipulation and Order) shall include any entity in which the Estate of Victor Posner or its Personal Representative owns any equity interest or otherwise controls, directly or indirectly.

*Id.* ¶ 4 (Page ID # 84). The stipulation also required Evans Tempcon to provide PBGC with copies of its bank statements on an ongoing basis. *Id.* ¶¶ 5–6 (Page ID # 84). The district court granted the stipulation on October 8, 2014. R. 17 (Dist. Ct. Order Granting Stipulation) (Page ID # 87). The district court later granted PBGC's third motion for an extension of time so that the settlement talks could continue. R. 18 (Third Unopposed Mot. for Extension of Time) (Page ID # 91). The district court denied the parties' fourth motion for an extension (their fifth attempt to secure additional time, including the stipulation), and Evans Tempcon answered PBGC's complaint a month later, on December 18, 2014. R. 21 (Dist. Ct. Order Denying Fourth Mot. for Extension of Time) (Page ID # 102); R. 22 (Answer) (Page ID # 103).

On October 15, 2014, a week after the district court entered the stipulation, Evans Tempcon wired $30,015 to Noroozi. R. 28–25 (Summary of Evans Tempcon Transfers at 120) (Page ID # 757). On November 12, 2014, Evans Tempcon wired Noroozi an additional $15,015. *Id.* at 127 (Page ID # 764). PBGC claims that Evans Tempcon made these transfers from "a non-payroll lock box account." Appellee Br. at 11. Both transfers were made before Evans Tempcon filed its answer, while the parties were still engaged in settlement talks and PBGC was filing motions for extensions of time on Evans Tempcon's behalf. *See* R. 28–25 (Summary of Evans

---

**2.** The suit also names the State of Michigan as a defendant because it has a lien against

Evans Tempcon's property. R. 28–7 (Lien Search at 7) (Page ID # 210).

Tempcon Transfers at 120, 127) (Page ID # 757, 764).

On January 20, 2015, PBGC filed a motion for a receivership, alleging that the Plan's interest in Evans Tempcon's property was at risk of loss or diminution. R. 28 (Mot. for Receivership) (Page ID # 143). Evans Tempcon attached a declaration to its opposition to the motion in which Noroozi stated that the funds wired to him were the "final repayments, made in the ordinary course of business, of the loans [he] had previously made to the Company." R. 36–3 (Noroozi Decl. ¶ 7) (Page ID # 832).

The district court held a hearing on the motion on March 12, 2015. R. 32 (Notice of Hr'g) (Page ID # 802); R. 46 (Hr'g Tr.) (Page ID # 949). On the day of the hearing, Evans Tempcon turned over the company's recent bank statements to PBGC. R. 46 (Hr'g Tr. at 10) (Page ID # 958). The statements revealed that Evans Tempcon had wired Noroozi an additional $30,000. *Id.* Thus, the transfers made after the district court entered the stipulation totaled over $75,000. The district court issued an opinion a few days later, granting PBGC's motion for a receivership. R. 41 (Dist. Ct. Op.) (Page ID # 861).

The Estate and Nestor, although not named parties, filed a notice of interlocutory appeal on March 30, 2015. R. 47 (Notice of Interlocutory Appeal) (Page ID # 1008). They also asked the district court to stay the appointment of a receiver while the appeal was pending. R. 48 (Mot. to Stay) (Page ID # 1010). On April 15, 2015, the district court denied the motion to stay and appointed a receiver. R. 54 (Dist. Ct. Order Denying Mot. to Stay) (Page ID # 1050); R. 55 (Dist. Ct. Order Appointing Receiver) (Page ID # 1054). The Estate and Nestor have since obtained separate counsel, and the Estate

has voluntarily dismissed its appeal. 6th Cir. Dkt. Nos. 5, 18, 19, 26, 28, 29. We have jurisdiction under 28 U.S.C. § 1292(a)(2), which gives the courts of appeals jurisdiction over "[i]nterlocutory orders appointing receivers."

## II. ANALYSIS

We review the appointment of a receiver for an abuse of discretion. 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983 (3d ed. 2014). "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC v. Capwill,* 462 F.3d 543, 551 (6th Cir. 2006); *see also* Fed.R.Civ.P. 66. A receivership is an "extraordinary remedy" that a court should employ with the "utmost caution" and grant "only in cases of clear necessity to protect plaintiff's interests in the property." Wright & Miller, *supra,* § 2983.

District courts consider a number of factors in deciding whether to appoint a receiver, including whether the property at issue is in "imminent danger of ... being lost, concealed, injured, diminished in value, or squandered," whether the defendant engaged in fraudulent conduct, "the inadequacy of the available legal remedies," the lack of less drastic equitable remedies, and the likelihood that the appointment will do more good than harm. *Id.* District courts also consider whether there is inadequate security for a debt and whether a debtor is insolvent. *See View Crest Garden Apartments, Inc. v. United States,* 281 F.2d 844, 847 (9th Cir.1960); *Garden Homes, Inc. v.*

*United States*, 200 F.2d 299, 301 (1st Cir. 1952).

Nestor's arguments all rest on a single premise—that the stipulation was adequate to protect Evans Tempcon's assets. From this premise she reasons that, because receiverships should be imposed only in cases of clear necessity, the district court's order was an abuse of discretion. Appellant Br. at 19–21. Nestor concedes that actions taken after the stipulation was entered could justify a receivership, but argues that here those actions (the transfers to Noroozi) were in the ordinary course of business. *Id.* at 22–23. Nestor's claim that the stipulation was adequate, however, is based solely on the fact that PBGC signed the stipulation and the district court entered it.[3] *See id.* at 21–22. Neither one of these facts establishes any kind of adequacy. Indeed, that the district court found Evans Tempcon violated the stipulation suggests it was *in*adequate to protect Evans Tempcon's assets. Thus, although Nestor claims that the district court's order stands or falls with the transfers to Noroozi, it is actually the merits of her appeal that stand or fall with her claim that the stipulation was adequate. *See id.* at 20. And here, they fall.

Even if we were to accept Nestor's premise, none of her arguments has merit.[4] For example, Nestor contends that the stipulation did not apply to Noroozi, but Nestor ignores the stipulation's clear language. *Id.* at 25–26; R. 16 (Proposed Stipulation ¶ 4) (Page ID # 84) (stating that the stipulation "applies, *but is not limited to*, any and all transfers of Evans Property to or for the benefit of any of Evans' affiliate, the Estate of Victor Posner, or to the Personal Representative of the Estate of Victor Posner" (emphasis added)). Nestor also contends that the district court did not give Nestor an opportunity to call Noroozi during the hearing and later faulted her for not doing so, but nothing in the hearing transcript supports this claim. Appellant Br. at 26–27; R. 46 (Hr'g Tr. at 55–58) (Page ID # 1003–06). Nestor further argues that each one of the factors that PBGC contends is satisfied— for example that the value of Evans Tempcon's property is inadequate security for its debts and that PBGC is likely to succeed in the underlying foreclosure action— is insufficient to uphold the district court's

---

3. Nestor also argues that the fact that the district court ordered the stipulation remain in place pending the appointment of the receiver demonstrates that the stipulation was adequate. Appellant Br. at 27-29. The only thing this demonstrates, however, is that the district court thought an inadequate remedy was better than no remedy at all.

4. Nestor has constitutional standing, as she has alleged "an injury in fact," "a causal connection between the injury and the conduct complained of," and a "likel[ihood] ... that the injury will be redressed by a favorable decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted). We do not consider, however, whether Nestor has standing to appeal under *Fidelity Bank, National Ass'n v.*

*M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (applying the person-aggrieved doctrine, from the now-repealed Bankruptcy Act of 1898, to appeals by third-party litigants from orders in federal receiverships). PBGC did not raise this argument it in its response to Nestor's initial brief and we cannot consider it *sua sponte*. *See In re Troutman Enterprises, Inc.*, 286 F.3d 359, 364 (6th Cir.2002) (describing the person-aggrieved doctrine as "more limited than Article III standing or the prudential requirements associated therewith"). Although we can raise questions of subject matter jurisdiction *sua sponte, Loren v. Blue Cross & Blue Shield of Mich.*, 505 U.S. 598, 607 (6th Cir.2007), a lack of statutory standing does not implicate subject-matter jurisdiction, *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir.2011).

decision. Appellant Reply Br. at 4–10. Nestor fails to consider these factors together. Even if any one factor might be insufficient on its own, together they are not. Finally, Nestor claims that the stipulation is invalid (and that the district court's order is therefore also invalid) because Nestor, and not her attorney, signed it; Nestor offers no relevant authority for this argument. Appellant Br. at 23–24.

## III. CONCLUSION

Because Nestor has not shown that the district court abused its discretion, we **AF-FIRM** the district court's order granting PBGC's motion to appoint a receiver.