Barry LIPTON and Edward Lopez, as the Union Trustees of the Newspaper Guild of New York Consumers Union Pension Fund, Plaintiffs,

v.

THE CONSUMERS UNION OF THE UNITED STATES, INC., and Maurice Eskenazi, Norman Leonarczyk, and Rick Lustig, as the Employer Trustees of Newspaper Guild of New York Consumers Union Pension Fund, Defendants.

No. 98 Civ. 1599(LAK).

United States District Court, S.D. New York.

Jan. 20, 1999.

Brian O'Dwyer, O'Dwyer & Bernstein, New York City, for Plaintiff.

Myron D. Rumeld, Proskauer Rose, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case presents the question whether an employer pension fund, established with a provision that limits investment of plan assets in certain securities to serve the employer's business interests, violates Section 302(c)(5) of the Taft–Hartley Act. Plaintiffs allege that the plan violates the Act because it was not established for the sole and exclusive benefit of the participants of the plan and their beneficiaries. Defendants move for dismissal or, in the alternative, summary judgment.

*Facts*

The Consumers Union of the United States ("CU"), a defendant in this case, is a not-for-profit corporation providing prod-

uct and service information to consumers. It perhaps is best known as publisher of *Consumers Reports Magazine.*

In January of 1975, CU, together with the Newspaper Guild of New York, established a pension fund for CU employees by executing a Declaration of Trust (the "Trust Agreement"). The Trust Agreement dictated that employer trustees, selected by CU, and union trustees, selected by the Guild, would administer the pension fund jointly. Two of the union trustees, Barry Lipton and Edward Lopez (the "Union Trustees"), bring this action against CU and three employer trustees. Maurice Eskenazi, Norman Leonarczyk, and Rick Lustig (the "Employer Trustees").

### The Plan Documents

The starting point for this dispute is the documents which govern this plan: the Trust Agreement and the Pension Plan (the "Plan Document"). While both documents empower the trustees to invest in securities, historically both defined securities restrictively, as "bills, notes, bonds, debentures and other debt obligations issued (or guaranteed as to principal and interest) by the United States of America or any of its agencies or instrumentalities."[1] The exclusion of equity securities from the definition of securities, according to defendants, arose from CU's desire to maintain a reputation as an unbiased consumer reporter.

Plaintiffs argue that the restriction on the power of the trustees to invest in equity securities benefits CU and furthers its corporate purposes. It illegally creates an artificial limit to the retirement benefits which would otherwise be payable to covered retired employees. This, plaintiffs argue, violates the dictate of the Labor Management Relations Act of 1947 ("LMRA")[2] that the plan be operated for the sole and exclusive benefit of plan participants and their beneficiaries.

### Efforts to Change the Documents

Parties on both sides of this dispute have tried to alter the investment restriction before. The Union Trustees tried to eliminate the restriction by changing the Plan Document. On August 3, 1990, May 14, 1997, and September 10, 1997, they proposed changing the Plan Document's definition of securities and property to include all equity securities.[3] Each time a vote was taken, Union Trustees voted for the measure, and Employer Trustees against it.[4] Since the Plan Document grants the Union Trustees no power to effect changes in the document unilaterally,[5] these efforts failed.

CU also acted to broaden the range of permitted investments, although in a more limited fashion. On September 10, 1997, the Employer Trustees tried to amend the Trust Agreement to permit investment in socially responsible mutual funds.[6] The Employer Trustees voted in favor of the proposals, while the Union Trustees did not vote.[7] Since amendment of the Trust Agreement requires a unanimous vote of the trustees,[8] this attempt to change the limitation also failed.

CU then took a different tack. Unlike the Trust Agreement, which requires unanimous trustee action for amendment, the Plan Document provides that "[t]he Employer expressly reserves the right, by action of its Board of Directors, subject to the provisions of the Collective Bargaining Agreement, to amend the Plan as to its participants or to terminate the Plan or to completely discontinue contributions as to

---

1. Trust Agreement, Article V, Section O of the Second Amendment; Plan Document, Article XI, Section 11.4.

2. 29 U.S.C. §§ 141 et seq. (1998).

3. Lustig Aff. ¶¶ 5, 6, and 8.

4. *Id.*

5. *See generally* Plan Document.

6. Lustig Aff. ¶ 9.

7. *Id.*

8. Trust Agreement, Article X, Section A.

its Participants at any time and without consent as to any other party." [9] Interpreting this provision to permit unilateral amendment of the investment policy, CU's board of directors amended the Pension Plan on October 24, 1997 to authorize investment in socially responsible mutual funds.[10]

After the amendment, the Plan Document defined securities to include "all socially responsible equity mutual funds to the extent permitted by ERISA" [11] in addition to the fixed income securities already permitted. The Employer Trustees next moved to direct pension monies into those mutual funds. On November 19 and December 10, 1997, however, the Union Trustees voted against this.[12] The Union Trustees, in fact, dispute the validity of the amendment altogether.

Two arbitrations have addressed matters in this case. On November 19, 1997, the Union Trustees asked the American Arbitration Association ("AAA") to arbitrate their request to include all equity securities in the definition of securities.[13] On October 14, 1998, however, the arbitrator ruled that issue could be arbitrated only upon the unanimous request of the trustees.[14] No such unanimous request was made, and the matter therefore was beyond his power.[15]

On December 18, 1997, the Employer Trustees asked the AAA to arbitrate the dispute over directing money to socially responsible mutual funds.[16] The Court is unaware of any conclusion to this, second, arbitration.

## Discussion [17]

### The "Sole and Exclusive Benefit" Requirement

Plaintiffs make their claim under Section 302 of the LMRA, 29 U.S.C. § 186,[18] a labor law enacted to prevent bribery and corruption. It provides in relevant part:

"(a) It shall be unlawful for any employer ... to pay, lend or deliver ... any money or other thing of value -

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer of employee thereof, which represents, seeks to represent, or would

9. Section 12.1, Plan Document.

10. Harris Aff. ¶ 18.

11. *Id.*

12. Lustig Aff. ¶¶ 10, 13.

13. *Id.* at ¶ 12.

14. Opinion and Award of Arbitrator, *In the Matter of the Arbitration between Union Trustees–Newspaper Guild/Consumers Union Pension Plan and Employer Trustees–Newspaper Guild/Consumers Union Pension Plan*, Case No. 13 300 01964 97, October 14, 1998, at 24–26.

15. *Id.*

16. Lustig Aff. ¶ 14.

17. Defendants argue that since they already have broadened the definition of permissible securities investments under the plan, this matter is moot. "A case or controversy becomes moot either when the injury is healed and only prospective relief has been sought, or when it becomes impossible for the courts to redress the injury through the exercise of their remedial powers." *Fund for Animals v. Babbitt*, 89 F.3d 128, 133 (2d Cir.1996).

The board of directors' amendment neither healed this alleged injury nor prevents this Court from formulating relief. As an initial matter, plaintiffs dispute the effect of defendants' amendment, arguing that it is invalid. In addition, plaintiffs do not want to modify the investment restriction as defendants' amendment did, they want to eliminate the restriction entirely. *See* Cpt ¶ 19(1). Defendants' amendment therefore does not render plaintiffs' complaint moot.

18. 29 U.S.C. § 186 (1998). The LMRA claim is the only claim at issue here. Although the jurisdictional allegations of the complaint refer to the Employee Retirement Income Security Act of 1974 ("ERISA"), the sole claim for relief relies exclusively on the LMRA. In their motion papers too, plaintiffs relied only on the LMRA. The Court accordingly deems any ERISA claim waived.

admit to membership, any of the employees of such employer . . .

(b) It shall be unlawful for any person to request, demand, receive or accept, or agree to receive or accept, any payment, loan or delivery of any money or thing of value prohibited by subsection (a) of this section."

"(c) The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by [the representatives of the employees], for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . . Provided, That (A) such payments are held in trust for the purpose of paying . . . for the benefits of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees . . . ." [19]

Section 302 also grants some jurisdiction to the federal courts:

"(e) The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of title 28 (relating to notice to opposite parties) to restrain violations of this section . . . ." [20]

*Jurisdiction*

Defendants argue that this Court lacks jurisdiction over plaintiffs' claims.

In the broadest constitutional sense, this case clearly is within the judicial power of the United States under Article III. The parties' rights depend upon which construction of a federal statute the Court adopts. That is all that is required. "[I]t [is] a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or law of the United States, and sustained by the opposite construction. . . ." [21]

The question whether Congress has conferred the power to adjudicate this dispute on the district courts, however, is another matter. The scope of Section 302(e) jurisdiction long has been in dispute. In 1993, the Supreme Court tried to clarify the issue in *Local 144 Nursing Home Pension Fund v. Demisay*. [22] In *Demisay*, employees once covered by one multiemployer fund (the "Greater Funds") soon were to be covered by a newly established pension trust fund (the "Southern Funds"). The Southern Funds agreed to credit covered employees with all service time earned under the Greater Funds, so that employees would not lose benefits already earned.

To cover the liabilities which the Southern Funds assumed by making this promise, a group of contributing employers sued the Greater Funds to compel a transfer of a share of assets, reflecting the money contributed to the Greater Funds on behalf of employees who thereafter would be paid instead by Southern Funds. The plaintiff employers alleged that the Greater Funds no longer were "established . . . for the sole and exclusive benefit of the employees," and payments were not "held in trust for the purpose of paying" employee benefits. Since these were requirements of Section 302, the employers reasoned, the district court, pursuant to Section 302(e)'s grant of jurisdiction to restrain violations, should remedy the situation. The Supreme Court held, however, that the federal courts had no jurisdiction to do what the employers asked. The Court ruled that " § 302 does not provide

**19.** *Id.*

**20.** 29 U.S.C. § 186 (1998).

**21.** *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 822, 6 L.Ed. 204 (1824); *see also Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 807, 106 S.Ct. 3229,

92 L.Ed.2d 650 (1986); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494–95, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983).

**22.** 508 U.S. 581, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993).

authority for a federal court to issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in the manner described in 302(c)(5)." [23] Instead, the Court said, Section 302(e) permits district courts only to restrain violations of the section.

The Court's description of what constituted a violation drew two distinctions. First, the Court said that violations occurred "not when funds are administered by the trust fund" but rather when Sections 302(a) and (b) were violated, that is, when "[funds] are 'pa[id], len[t], or deliver[ed]' to the trust fund or when they are 'receive[d], or accept[ed]' by the trust fund, or 'request[ed] or demand[ed]' for the trust fund." [24] In other words, violations occur only when money is paid into the trust; no violation occurs when money already in the trust is invested or otherwise administered.

The Court drew also a second distinction, between establishment of a trust for a particular purpose and operation in compliance with that purpose. The exception in Section 302(c)(5), the Court said,

"relates, not to the purpose for which the trust fund is in fact used (an unrestricted fund that happens to be used 'for the sole and exclusive benefit of the employees' does not qualify); but rather to the purpose for which the trust fund is 'established' and for which the payments are 'held in trust.' " [25]

Failure over time to comply with these purposes, the Court said, "may be a breach of [trustees'] contractual or fiduciary obligations and may subject them to suit for such breach; but it is no violation of § 302." [26] As federal courts have jurisdiction only over violations of Section 302, and failure to operate in compliance with Section 302(c)(5) is no violation, federal courts therefore have no jurisdiction over

a claim based on an alleged failure to operate in a particular manner.

The lack of jurisdiction over operation, however, differs from a court's power over establishment for a particular purpose. The *Demisay* court contrasted the two, and in excluding the first, impliedly included the second. While the way in which a fund is used is outside the jurisdiction of the federal courts, then, the purpose for which it is established is within that jurisdiction. In sum, the district courts have no jurisdiction over administration of a fund or operation in compliance with the purposes of 302(c)(5). These courts, however, do have jurisdiction over violations allegedly occurring when money is paid into a pension fund and over questions of the purposes for which a fund is established.

Plaintiffs argue that they fall within the latter category and that their suit is one about the purposes for which this fund was established. They argue that since the investment limitation serves CU's purposes, and not the employees, this pension fund was not established for the sole and exclusive benefit of employees, as the law requires.

Neither *Demisay* nor any Second Circuit case since *Demisay* has decided the precise issue here: whether a federal court has power to decide a challenge to a fund's initial structure. One district judge in this district suggested in *Berdeguez v. United Brotherhood of Carpenters and Joiners of America* [27] that such a claim does survive. Judge Sand there pointed out that *Demisay* clearly distinguished establishment cases from operation cases, and did not address the result of an establishment challenge. He suggested also that a narrow reading of *Demisay* was appropriate because of the federal interest in barring

23.  *Id.* at 587, 113 S.Ct. 2252.

24.  *Id.* at 588, 113 S.Ct. 2252.

25.  *Id.* (internal citations omitted).

26.  *Id.*

27.  No. 93 Civ. 0552(LBS), 1996 WL 551722 (S.D.N.Y. Sept. 26, 1996).

payments to employee representatives, except in certain circumstances.[28]

In addition, the brief references in other cases to the operation-establishment distinction suggest that it still is a viable one. In *DeVito v. Hempstead China Shop*,[29] for example, the Second Circuit dismissed a LMRA claim about operation of a fund. In doing so, however, it noted pointedly that "[the party] does not contest that the Benefit Fund was properly *established* under § 302(c)(5), but contends that it was subsequently *operated* in a manner inconsistent with 302(c)(5). *Demisay* precludes this argument."[30] Similarly in *Ladzinski v. MEBA Pension Trust*,[31] the court noted that "Ladzinski is not challenging 'the purpose for which the trust fund is established,' but rather the manner in which the Trustees are administering the Pension Plan,"[32] before it dismissed a claim under *Demisay* reasoning.

It is true, as another district court has noted, that the distinctions drawn in *Demisay* are vulnerable to re-characterization and word games which do not mirror distinctions in fact. In *Mason Contractors Association of America v. International Council of Employers of Bricklayers & Allied Craftsmen*,[33] the court found no jurisdiction over LMRA claims which grew out of amendments to a Trust Agreement altering who appointed trustees. Although the amendments at issue in that case were made during the operation of the fund, the plaintiffs characterized them as structural flaws which affected the original eligibility of the fund under Section 302. The district court rejected this argument as an exercise in semantics, pointing

out that the *Demisay* plaintiffs could have made the same argument.[34]

The case before this Court differs in an important way, however, from both *Mason Contractors* and *Demisay*. In those cases, plaintiffs complained about events that occurred during the operation of the fund. The plaintiffs in this case allege that a clause in the original establishing document of the pension plan violated Section 302 because its inclusion prevented the plan from being for the sole and exclusive benefit of employees. For this reason, the result here is different than in *Demisay* and *Mason Contractors*.

■ To invoke the Court's jurisdiction, the claim must be evident on the face of a well pleaded complaint.[35] Plaintiffs' complaint alleges that "this restriction [on investment] was established to further the business interests of defendant and works to the detriment of Fund participants and beneficiaries in that such investments yield substantially less than other prudent investments."[36] This court, like Judge Sand, is convinced that a claim about the purpose for which this fund was established is within the Court's jurisdiction even after *Demisay*.

### Summary Judgment

■ Having concluded that this Court has jurisdiction, the next issue is whether plaintiffs state a viable claim. The Court concludes they do not.

Plaintiffs claim that the investment restriction serves CU's interests because it helps to maintain CU's reputation and to further its business purposes. For the purposes of this motion, the Court assumes that to be true. The question re-

28.  *Id.* at *5, *7.

29.  38 F.3d 651 (2d Cir.1994).

30.  *Id.* at 654 n. 3 (emphasis added).

31.  951 F.Supp. 570 (D.Md.1997).

32.  *Id.* at 573.

33.  853 F.Supp. 515 (D.D.C.1994).

34.  *Id.* at 523.

35.  *Louisville and N R Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998).

36.  Cpt ¶ 2.

mains whether that circumstance requires the conclusion that the pension plan was not established for the sole and exclusive benefit of employees within the meaning of the LMRA.

The LMRA was enacted to prevent "the corruption of collective bargaining through bribery of employee representatives by employers, [ ] extortion by employee representatives, and [ ] the possible abuse by union officials of the power which they might achieve if welfare funds were left to their sole control."[37] It was a reaction to "serious Congressional concern over union corruption and alleged 'shake-down' and 'kick-back' schemes involving union welfare funds."[38] Its proponents hoped to stop brazen abuses like the diversion of benefit funds to people other than the employees who earned them.[39] Fundamentally, the LMRA's drafters aimed to ensure the integrity of union welfare funds.

Plaintiffs here present no evidence of such dishonest practices. They do not allege theft, or misappropriation, or diversion of monies. Instead they argue that the investment policies adopted in this plan benefit CU's corporate reputation and fail to produce the optimal return. This is simply not the wrongdoing the

LMRA was intended to prevent.[40] Moreover, plaintiffs' argument proves too much. Plaintiffs suggest that when an employer benefits from a plan, it violates the law's requirement that the plan solely benefit employees. But every pension plan benefits its sponsoring employer, whether the employer wins positive publicity for providing an excellent benefit package or gains a competitive edge in hiring talented employees. Every employer can be expected also to safeguard its corporate interests, even as it extends benefits to employees. Requiring anything else would result in no employee pension plans at all.

Even assuming the facts are as they allege, plaintiffs fail to state a viable claim under Section 302 of the LMRA.

*Conclusion*

For the foregoing reasons, the defendants' motion for summary judgment dismissing the complaint is granted.[41] This closes the case.

SO ORDERED.

---

**37.** *Arroyo v. United States,* 359 U.S. 419, 425–26, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959).

**38.** *Waggoner v. Dallaire,* 649 F.2d 1362, 1366 (9th Cir.1981).

**39.** *United Mine Workers of America Health and Retirement Funds v. Robinson,* 455 U.S. 562, 572, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).

**40.** Other courts have recognized that "where there is no intimation of bribery, extortion or union misuse of funds" conduct does not "strike at the purposes of § 302." *Turner v. Local Union No. 302, Int'l Bhd. of Teamsters,* 604 F.2d 1219, 1228 (9th Cir.1979); *see also Local Union No. 5 of the Sheet Metal Workers Int'l Ass'n. v. Mahoning and Trumbull County Bldg. Trades Welfare Fund,* 541 F.2d 636, 638 (6th Cir.1976) (same). While these cases precede *Demisay,* and perhaps exercise jurisdiction where this Court would not, they nonetheless are persuasive as to the historical

meaning of the "sole and exclusive benefit" requirement.

**41.** Defendants contended in their papers that the matters raised by plaintiffs should be arbitrated. This Court, mindful of the strong federal preference for arbitration, nonetheless has reached the merits of this case because one arbitrator has already concluded that the issue before the Court is not arbitrable, a second may do the same, and ultimately defendants pressed for a ruling on the merits. *See In the Matter of the Arbitration between Union Trustees–Newspaper Guild/Consumers Union Pension Plan and Employer Trustees–Newspaper Guild/Consumers Union Pension Plan,* Case no. 13 300 01964 97, at 24–26 (October 14, 1998) (Benewitz, Arb.) (concluding that arbitration of suggested changes to the investment policy was beyond his power and properly the province of a court). The second arbitration is equally unlikely to resolve the issues here. It addresses investment

solely in socially responsible mutual funds rather than the unrestricted investment plaintiffs here seek.