RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0297p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DANIEL P. SOEHNLEN; BILL REEVES; SUPERIOR
DAIRY, INC.,

        *Plaintiffs-Appellants,*

     *v.*

FLEET OWNERS INSURANCE FUND; ROBERT
KAVALEC; CHARLIE ALFERIO; VICTOR COLLOVA,

        *Defendants-Appellees.*

No. 16-3124

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:15-cv-00445—Donald C. Nugent, District Judge.

Argued: October 18, 2016

Decided and Filed: December 21, 2016

Before: KEITH, BATCHELDER, and CLAY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Keith L. Pryatel, KASTNER WESTMAN & WILKINS, LLC, Akron, Ohio, for Appellants. Eric G. Serron, STEPTOE & JOHNSON LLP, Washington, D.C., for Appellees. **ON BRIEF:** Keith L. Pryatel, Kenneth M. Haneline, KASTNER WESTMAN & WILKINS, LLC, Akron, Ohio, for Appellants. Eric G. Serron, Paul J. Ondrasik, Jr., Osvaldo Vazquez, STEPTOE & JOHNSON LLP, Washington, D.C., Lance B. Johnson, LANCE B. JOHNSON LLP, Cleveland, Ohio, for Appellees.

1

---

**OPINION**

---

CLAY, Circuit Judge.  Plaintiffs Daniel Soehnlen, Bill Reeves, and Superior Dairy, Inc. filed suit alleging that Defendants Fleet Owners Insurance Fund, Robert Kavalec, Charlie Alferio and Victor Collova, breached a range of obligations under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (1974), the Patient Protection and Affordable Care Act of 2010 ("ACA"), 26 U.S.C. § 5000A (Pub. L. No. 111-148, as modified by the subsequently enacted Health Care and Education Reconciliation Act, Pub. L. No. 111-152 (2010)), and § 302 of the Labor Management Relations Act ("Taft-Hartley Act"), 29 U.S.C. § 186 (1988).  Plaintiffs also brought breach of contract claims.  The district court dismissed Plaintiffs' complaint for failure to state a claim and for lack of standing.  For the reasons that follow, we **AFFIRM** the district court's judgment.

**BACKGROUND**

**Factual Background**

Plaintiff Superior Dairy, Inc. ("Superior Dairy") is an Ohio Corporation that engages in the manufacture and processing of milk-based products. Plaintiff Daniel P. Soehnlen is President and Chief Executive Officer of Superior Dairy.  Plaintiff Bill Reeves is an hourly employee of Superior Dairy, who also serves as a union steward on behalf of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, General Trucker Drivers and Helpers, Local Union No. 92.  As the parties concede, Defendant Fleet Owners Insurance Fund ("Fleet Owners" or the "Plan") is a multi-employer "welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1001, and a "group health plan" within meaning of the ACA, and therefore is covered by both ERISA and the ACA. Defendants, Robert Kavalec, Charlie Alferio, and Victor Collova are each represented to be either current or former trustees for the Plan, responsible for overseeing its operation.

In order to provide medical coverage to its employees, Superior Dairy contracted with Fleet Owners and memorialized the terms of their agreement by signing the participation

agreement (the "Participation Agreement") on April 14, 2014. The Participation Agreement incorporated by reference the Amended and Restated Agreement and Declaration of Trust signed in 2002 ("Trust Agreement"). Plaintiffs allege in their amended complaint that prior to entering into the Participation Agreement, they received certain assurances from Fleet Owners and individual trustees of the Plan, that the Plan would comply in all respects with federal law, including ERISA and the ACA.

According to Plaintiffs, notwithstanding the ACA's statutory requirement mandating that all group health plans eliminate per-participant and per-beneficiary pecuniary caps for both annual and lifetime benefits, the Plan maintains such restrictions. Consequently, Superior Dairy purchased supplemental health insurance benefits to fully cover its employees. Defendants do not, at this time, dispute the existence of benefit caps within the plan, but instead argue that the Plan is exempt from such requirements because it is a "grandfathered" plan.

### Procedural History

Plaintiffs filed their complaint against Defendants alleging violations of the ACA, ERISA, Taft-Hartley Act, and various provisions of the Trust Agreement and Participation Agreement that govern the Plan. The action was brought both on behalf of individual named Plaintiffs, Soehnlen and Reeves, and the company Superior Dairy, and on behalf of a class of similarly situated employees. The district court dismissed all seven counts alleged in Plaintiffs' complaint. Plaintiffs appeal every one of the district court's conclusions; we therefore consider each argument below.

### DISCUSSION

### Standard of Review

This Court reviews *de novo* both a district court's decision to dismiss the complaint for lack of subject matter jurisdiction and to dismiss for failure to state a claim. *See Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014); *In re Carter*, 553 F.3d 979, 984 (6th Cir. 2009) ("Where a district court rules on a 12(b)(1) motion to dismiss that attacks the claim of jurisdiction on its face, this Court reviews the decision *de novo*.") To avoid dismissal

under Rule 12(b)(6), a complaint must provide sufficient facts to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And where a plaintiff's Article III standing is at issue, the plaintiff must allege facts sufficient to establish the requisite individualized harm. *See Keener v. Nat'l Nurses Org. Comm.*, 615 F. App'x 246, 251 (6th Cir. 2015).

**Analysis**

## I.    ERISA Claims

### 1.  Count I and II: Monetary and Injunctive Relief under 29 U.S.C. § 1132 (a)(1)(B)

Plaintiffs allege that by failing to comply with the ACA provisions enjoining annual and life-time limitations on benefits, Defendants violated their ERISA rights. Consequently, Plaintiffs seek monetary and injunctive relief under 29 U.S.C. § 1132(a)(1)(B) of ERISA, which states that a civil action may be brought in federal court "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The district court dismissed the first two claims of Plaintiffs' complaint for lack of standing. Arguing that they have sufficiently pleaded an invasion of their congressionally defined rights, Plaintiffs ask us to reverse the district court. We decline to do so.

As has been reaffirmed countless times, there are two components to any given standing inquiry: constitutional and statutory. The Supreme Court has recently clarified, however, that what has been called "statutory standing" in fact is not a standing issue, but simply a question of whether the particular plaintiff "has a cause of action under the statute." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014)). Defendants do not oppose, and we assume without considering, that Plaintiffs have a valid cause of action under ERISA in order to bring their § 1132(a)(1)(B) claim. But, as has been repeatedly proclaimed by the Supreme Court, even if a plaintiff has a cause of action arising under a given statute, "federal courts . . . have only the power that is authorized by Article III" and, therefore, we must analyze standing under Article III. *See, e.g., Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

With respect to claims arising under ERISA, plaintiffs are not absolved from showing that the elements of Article III are met. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007) (citing *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 199 (2nd Cir. 2005)).

"Article III limits the judicial power of the United States . . . and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). Consequently, it must be determined whether Plaintiffs have "'such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Plaintiffs bear the burden of establishing standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992). To satisfy Article III's standing requirements, a plaintiff must show: "(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Loren*, 505 F.3d at 606–07 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000)).

We scrutinize the "injury-in-fact" element of standing in order to determine not just whether Plaintiffs have sufficiently pleaded a statutory injury, but a constitutional one as well. As the Supreme Court recently affirmed in *Spokeo, Inc. v. Robins*, an injury-in-fact contains the two distinct elements of particularization and concreteness. 136 S. Ct. 1540, 1548–50 (2016). For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury"). While "particularization is necessary to establish injury in fact[,] . . . it is not sufficient." *Spokeo*, 136 S. Ct. at 1548. A plaintiff must also show that he suffered a concrete injury, defined as a "de facto" injury, meaning that the injury "must actually exist." *Id.*

Pointing specifically to *Spokeo*, Plaintiffs contend that the Supreme Court has radically altered the landscape for pleading injury-in-fact. Consequently, they believe that by merely alleging a violation of ERISA rights, they satisfy their obligation under Article III. We disagree on both points. While we recognize that the Supreme Court acknowledged that non-tangible injuries, including violations of statutory rights, may satisfy the constitutional showing of an injury-in-fact, we also take the Court at its word when it cautions that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Therefore, even if we assume the injury is sufficiently particularized, Plaintiffs must still show that the deprivation of a right created by statute is accompanied by "some concrete interest that is affected by the deprivation." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). A "concrete" intangible injury based on a statutory violation must constitute a "risk of real harm" to the plaintiff. *Id.*

Plaintiffs argue, in extreme generality, that certain members of their class suffer from conditions that have previously required medical expenses in excess of the benefit caps imposed by the Plan. They also claim that some of their employees will choose to delay important medical procedures in order to avoid exceeding the cap. We again reiterate, Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims. We previously made clear that potential class representatives must demonstrate "individual standing vis-a-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). Individual Plaintiffs never show precisely what concrete harm they suffer as a result of Defendants' violations of their ERISA rights. By merely arguing, as Plaintiffs do, that the pecuniary limitations imposed by the Plan exist, without anything further, Plaintiffs cannot hope to satisfy the concreteness prong of the injury-in-fact requirement of Article III.[1] *See Lee v.*

---

[1]With respect to Plaintiffs' assertion that Plaintiff Superior Dairy suffered an injury by having to purchase supplemental insurance, claims by an employer are not cognizable under § 1132(a)(1)(B). *See Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 418 (6th Cir. 2014) ("As an employer in a multiple-employer plan, GSMT concedes that it has no valid cause of action under ERISA); *see also Whitworth Brothers Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 225–27 (6th Cir. 1986)

*Verizon Commc'ns, Inc.*, No. 14-10553, 2016 WL 4926159, at \*2 (5th Cir. Sept. 15, 2016) (explaining that *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 120 (2d Cir. 2009) rejected the argument that defendants' violation of their statutory duties under ERISA is in and of itself an injury in fact to the plaintiff).

To the extent that Plaintiffs claim they personally suffer a constitutional injury by remitting money towards a non-compliant plan, they cannot state a claim. This Court has already determined that under § 1132(a)(1)(B), the mere fact that a plaintiff pays funds into a non-compliant plan, if an injury at all, is "neither concrete nor particularized, and is instead, arguably conjectural and hypothetical" and therefore does not satisfy injury-in-fact. *Loren*, 505 F.3d at 608. Accordingly, we dismiss Plaintiffs' first two claims for lack of subject matter jurisdiction.[2]

## 2. Count III: Monetary and Injunctive Relief under § 1132(a)(1)(B) and § 1132(a)(3)

In Count III of their complaint, Plaintiffs, without introducing any additional facts, allege that Defendants have refused to provide benefits and coverage mandated by the ACA and ERISA. They seek to enjoin future violations and obtain appropriate monetary, declaratory, and equitable relief to redress the violations under § 1132(a)(1)(B) and § 1132(a)(3). In relevant part, § 1132(a)(3) reads:

> a civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

---

(explaining that the principal civil enforcement provision of ERISA did not grant jurisdiction to employers, aside from some causes of action under multiemployer plans).

[2]It should be pointed out that we would just as likely dismiss Plaintiffs' argument on the merits as well. In *CIGNA Corp. v. Amara*, the Supreme Court made clear that § 1132(a)(1)(B) does not afford a court any "authority to reform [a] plan as written." 563 U.S. 421, 438 (2011). "The statutory language speaks of enforcing the terms of the plan, not of changing them." *Id.* at 436. By arguing that the terms of the Plan do not comply with the law, Plaintiffs tacitly concede that the relief they seek exists outside the scope of their plan. And an action attempting to re-write the terms of a plan is unavailable under § 1132(a)(1)(B). *See Pender v. Bank of Am. Corp.*, 788 F.3d 354, 361–62 (4th Cir. 2015) (holding that a cause of action could not be advanced under § 1132(a)(1)(B) when the plaintiffs sought to enforce the plan "not as written, but as it should properly be enforced under ERISA.").

As the Supreme Court explained in *Varity Corp. v. Howe*, 516 U.S. 489 (1996) § 1132(a)(3) is a "catch-all" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Id.* at 512. Nonetheless, Plaintiffs' arguments once again run counter to the mandate of Article III.

First, as a threshold matter, when bringing a suit under § 1132(a)(3) for monetary relief, plaintiffs must establish injury-in-fact. *See Loren*, 505 F.3d at 609; *see also Perelman v. Perelman,* 793 F.3d 368, 373 (3d Cir. 2015) ("claims demanding a monetary equitable remedy . . . require the plaintiff to allege an individualized financial harm traceable to the defendant's alleged ERISA violations); *Cent. States,* 433 F.3d at 200 ("obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrat[ing] individual loss"); *Harley v. Minn. Mining and Mfg. Co.,* 284 F.3d 901, 906–07 (8th Cir. 2002) (holding no constitutional standing existed because the "loss did not cause actual injury to plaintiffs' interests in the plan"). Consequently, to the extent Plaintiffs' claim under § 1132(a)(3) seeks monetary relief, it must be dismissed because, as previously discussed, Plaintiffs did not demonstrate individual harm.

However, with respect to their request for injunctive relief, Plaintiffs contend, relying upon *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003), subsequently cited by this Court in *Loren*, 505 F.3d at 609–10, that a plaintiff need not establish "actual harm" under § 1132(a)(3). We again disagree. To the extent we have allowed cases to go forward without compelling plaintiffs to show individualized injury, the cases were advanced under a different theory of liability than alleged by Plaintiffs. The plaintiffs in both *Horvath* and *Loren* argued that defendants breached their fiduciary duties under the ERISA plan. A plaintiff who brings suit under § 1132(a)(2) for breach of fiduciary duty does so in order to "seek recovery on behalf of the plan." *Loren*, 505 F.3d at 608; *see also Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (holding that a participant's fiduciary action brought pursuant to § 1132(a)(2) must seek remedies that provide a "benefit [to] the plan as a whole"); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) ("It is well settled, moreover, that suit under § 1132(a)(2) is brought in a representative capacity on behalf of the plan as a whole and

that remedies under § 1109 protect the entire plan."). Any recovery does not accrue to the plaintiff, but the plan itself.

Plaintiffs pair their request for injunctive relief with allegations of a breach of § 1132(a)(1)(B), a statute requiring a court to make individualized determinations of benefits. Although we have noted that there is a distinction between an individual claim for benefits under § 1132(a)(1)(B) and a claim brought under § 1132(a)(3) to compel a defendant to alter the manner in which it administers all the claims under the plan, *see Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005), we have never held that such a claim can proceed without the individual plaintiffs' showing a constitutional injury. And we decline to do so now, finding that Plaintiffs cannot escape their obligation to show a constitutional injury.[3]

### 3. Count IV: Breach of Fiduciary Duty

Count IV of Plaintiffs' complaint alleges that Defendant trustees Kavalec, Collova and Alferio have each breached their fiduciary obligations to the Plan, subjecting it to over $15,000,000 in taxes and penalties. In turn, they request appropriate monetary, injunctive, and equitable relief pursuant to 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1132(a)(3); and 29 U.S.C. § 1109(a). We reject their claim for monetary relief, because as previously discussed, individual plaintiffs bringing an action for monetary relief, even one brought derivatively on behalf of a plan, must personally satisfy the requirements of Article III. *See Loren*, 505 F.3d at 609.

Nonetheless, Plaintiffs press their claim for injunctive relief, arguing they need not show individual injury to obtain injunctive relief for a breach of fiduciary duty, relying again upon *Horvath* and *Loren*. In *Loren*, we considered a similar argument pursuant to § 1132(a)(2) and § 1132(a)(3), and recognized that while the plaintiffs' arguments under § 1132(a)(2) were "too speculative to establish constitutional standing," *Loren*, 505 F.3d at 609, plaintiffs' action requesting injunctive relief may proceed under § 1132(a)(3) "to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm." *Id.* (citing *Cent. States*, 433 F.3d at 199 and *Horvath*, 333 F.3d at 450). We concluded that "[p]laintiffs need not

---

[3]In the alternative, this claim may be dismissed on ripeness grounds because it is "anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997).

demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3); they may allege only violation of the fiduciary duty owed to them as a participant in and beneficiary of their respective ERISA plans." *Id.*

We now recognize that some ambiguity may have been engendered by this decision and take this opportunity to provide clarification. There is no doubt that ERISA imposes on plan fiduciaries a duty to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA. 29 U.S.C. § 1104(a)(1)(D). However, it is not sufficient merely to state, as Plaintiffs do, that the plan is deficient without showing which specific fiduciary duty or specific right owed to them was infringed. *See Kendall* 561 F.3d at 120 (narrowing the broad language of *Horvath* and noting plaintiffs "did have to show that they were generally harmed by the deprivation of a *specific* right.") (emphasis added). Plaintiffs argument again suffers from the same lack of concreteness with respect to injury as previously explained. We recognize that misconduct by the administrators of a benefit plan can create an injury if "it creates or enhances a risk of default by the entire plan." *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 255 (2008). But Plaintiffs make no showing of actual or imminent injury to the Plan itself. Plaintiffs concede this point by pleading that the actions of the fiduciaries expose the Plan to *prospective* liability in the amount of $15,000,000. To the extent that Plaintiffs argue that the risk of an enforcement action is itself sufficient to constitute an injury, we find in the absence of any evidence that penalties have been levied, paid, or even contemplated that "these risk-based theories of standing [are] unpersuasive, not least because they rest on a highly speculative foundation lacking any discernible limiting principle." *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013). We therefore affirm the district court's finding that Plaintiffs' lack standing to bring this claim.

### 4. Count V: Breach of § 1149

In Count V of their complaint, Plaintiffs argue pursuant to 29 U.S.C. § 1149 that Defendants Robert Kavalec, Victor Collova, and Charlie Alferio made false statements and false representations of fact, knowing these representations to be false in connection with the advertising, marketing or sale to Superior Dairy. Allegedly, Defendants made certain promises to Plaintiffs that the Plan would comply in all respects with ERISA and welfare benefit laws;

such assurances were instrumental to Superior Dairy's contracting with Fleet Owners to have the Plan provide medical benefits.

Interpreting § 1149 presents this Court with an issue of first impression.[4] Neither litigant points to a single case construing § 1149 or produces concrete authority regarding whether § 1149 provides Plaintiffs with a cause of action. But, even if we assume, which we now do without deciding, that it does, we must still dismiss for failure to state a claim upon which relief can be granted.[5] Section § 1149 provides in relevant part:

> No person, in connection with a plan or other arrangement that is [a] multiple employer welfare arrangement described in section 1002(40) of this title, shall make a *false* statement or *false representation* of fact, knowing it to be false, in connection with the marketing or sale of such plan or arrangement, to any employee, any member of an employee organization, any beneficiary, any employer, any employee organization, the Secretary, or any State, or the representative or agent of any such person, State, or the Secretary, concerning . . . . (2) The benefits provided by such plan or arrangement.

29 U.S.C. § 1149 (emphasis added).

In instances where we have been faced with similar statutory language, we have found that a heightened pleading standard, as expressed under Fed. R. Civ. P. 9(b), should be applied to a plaintiff's allegations. *See, e.g.*, *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504–05 (6th Cir. 2008) (finding that a *qui tam* action under the False Claims Act should be pled under Rule 9(b) because it imposes liability on a person who "*knowingly* makes, uses, or causes to be made or used, a *false* record or statement to get a *false* or fraudulent claim paid or approved by the government.") (emphasis added).

Dismissal of a complaint for failure to comply with Rule 9(b) is reviewed as a dismissal for failure to state a claim. *SNAPP, Inc.*, 532 F.3d at 502. A complaint may be dismissed if it contains "no specific information about the filing of the claims themselves—nothing, that is, to

---

[4]The District Court dismissed the action, finding that § 1149 was a criminal-only enforcement provision, thereby falling within the exclusive purview of the Attorney General and affording no individual cause of action.

[5]When the standard of review is *de novo* and involves only applications of legal conclusions to the undisputed facts in the record, we may affirm on any grounds supported by the record even if different from the reasons of the district court. *Angel v. Ky.*, 314 F.3d 262, 264 (6th Cir. 2002) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

alert the defendants 'to the precise misconduct with which they are charged and [to] protect[] defendants against spurious charges of immoral and fraudulent behavior.'" *Sanderson v. HCA– The Healthcare Company*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). To insure that a defendant has sufficient notice, a plaintiff must "allege the time, place and content of the alleged misrepresentation; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

Plaintiffs allege a violation under § 1149, which requires a showing of a false statement or false representation of fact; knowledge that the statement was false; and a connection with the marketing or sale of an ERISA plan. Under Rule 9(b), a plaintiff must plead each element of a fraud action with the requisite particularity in order to state a claim upon which relief can be granted. *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). Plaintiffs failed to do so in the instant case.

In their complaint, Plaintiffs do nothing more than restate the relevant section of § 1149 by claiming that the individual trustees made false statements and false representations of fact, knowing these representations to be false in connection with the advertising, marketing or sale to Superior Dairy during the course of their negotiations. The only specificity included in Plaintiffs' complaint refers to Defendants' promise that the Plan would comply in all respects with ERISA and welfare benefit laws, including without limitation the ACA. No further reference is made to false statements in Plaintiffs' amended complaint. At no point do Plaintiffs identify specific statements from particular trustees at specific times which constitute the purportedly false promises and assurances Plaintiffs now claim they relied upon.

Although the application of Rule 9(b) does not require formulaic compliance, we have made clear that in order to plead fraud with particularity, a plaintiff must allege among other things "the time, place, and content of the alleged misrepresentation." *Bledsoe*, 501 F.3d at 504. The rule's purpose is to alert defendants "as to the particulars of their alleged misconduct" so that they may respond. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (citing *Bledsoe*, 501 F.3d at 503). The heightened pleading standards are designed to prevent "fishing

expeditions," protect defendants' reputation from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters. *Id.* Plaintiffs' one sentence allegation does nothing to alleviate the concerns underscored by Rule 9(b) and we, therefore, dismiss this claim and turn to Plaintiffs' non-ERISA claims.

## II.    Plaintiffs' Additional Claims

### 1.  Count VI: The Taft-Hartley Act

Plaintiffs allege that Defendants have breached § 186 (a–e) of the Taft-Hartley Act because the Plan fails to identify a neutral third party that will break deadlocks amongst the parties in the event of a benefit dispute.  The district court dismissed, finding that the Supreme Court decision, *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581 (1993), foreclosed this action.  We agree, and affirm the dismissal.

In *Demisay*, the Supreme Court held that § 186(e), the jurisdictional component of the Taft-Hartley statute allowing a plaintiff to bring injunctive relief to enforce violations, did not extend to claims "requiring the trust funds to be administered in the manner described in § [186(c)(5)]." *Demisay*, 508 U.S. at 588.  Plaintiffs' claim rests entirely upon such a challenge and their complaint restates essentially word for word language derived from § 186(c)(5).  The Supreme Court was quite clear that "[t]he trustees' failure to comply with [§ 186(c)] may be a breach of their contractual or fiduciary obligations and may subject them to suit for such breach; but it is no violation of § [186]." *Id.* at 588–89.

Relying upon *Lipton v. Consumer Union of U.S., Inc.*, 37 F. Supp. 2d 241, 245 (S.D.N.Y. 1999), Plaintiffs advance an alternative reading of *Demisay* that distinguishes between instances in which a plaintiff seeks recovery of money already contributed to the fund and the situation at hand where Plaintiffs wish to enjoin future monthly payments to the Plan.  We reject such a tortured reading of *Lipton* and by extension *Demisay*.  In *Lipton*, the plaintiffs argued that by limiting the trustee's power to invest in any equity security not intended to benefit the union, the fund violated the Taft-Hartley Act.  *See id.* at 242.  The court agreed, finding that such a challenge proceeded not under § 186(c) but under § 186(a) because it questioned the initial purpose for which the fund was established.  The district court noted that a § 186(c) violation,

while itself not cognizable, could be used as evidence to show a violation under either § 186(a) or (b).

In explaining *Demisay*, the district court made two important observations. Plaintiffs rest their conclusion entirely upon the first: the timing of when money is paid out is important.  But, *Lipton* also states quite clearly that:

> The [Supreme] Court drew also a second distinction, between establishment of a trust for a particular purpose and operation in compliance with that purpose.  The exception in Section [186(c)(5)], the Court said, "relates, not to the purpose for which the trust fund is in fact used (an unrestricted fund that happens to be used for the sole and exclusive benefit of the employees does not qualify); but rather to the purpose for which the trust fund is established and for which the payments are held in trust."

*Id.* at 245 (quoting *Demisay*, 508 U.S. at 588).

*Lipton* concluded that to state a claim under Taft-Hartley, the suit must challenge the "purposes for which this fund was established" rather than the mechanisms by which the fund operates.  *Id.* at 246.  It again reaffirmed that courts do not have "jurisdiction over administration of a fund or operation in compliance with the purposes of § [186(c)(5)]."  Courts, however, do "have jurisdiction . . . over questions of the purpose for which a fund is established." *Id.* at 245.

Along with our sister circuits, we have endorsed a similar reading of the Taft-Hartley Act that seeks to distinguish the purpose behind the plan's founding and the manner by which the plan now operates.  *See Myers v. Bricklayers & Masons Local 22 Pension Plan*, 629 F. App'x 681, 685 (6th Cir. 2015) ("[B]ecause [plaintiff] alleges no bribery, extortion, or misuse of union funds, 29 U.S.C. § 186 offers no relief."); *Schneider v. Local 103 I.B.E.W. Health Plan*, 442 F.3d 1, 2 (1st Cir. 2006) (recognizing the distinction between how contributions "are used" and the purpose for which the fund was "established," but rejecting the challenge because the complaint failed to plead this); *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 654 (2d Cir. 1994) ("[Plaintiff] does not contest that the [Plan] was properly established under § 302(c)(5), but contends that it subsequently operated in a manner inconsistent with § 302(c)(5). *Demisay* precludes this argument.")   Therefore, the only manner by which a violation of § 186(c)(5) is relevant is if a plaintiff alleges that the plan was established for a purpose

contravening law.  Plaintiffs make no such allegations of fraudulent purpose.  Accordingly, we cannot countenance Plaintiffs' argument after *Demisay*.

### 2.  Counts VII and VIII: Breach of Contract

Finally, Plaintiffs bring breach of contract claims. Prior to considering the merits of such state law claims, a court of appeals "must determine its own jurisdiction and is bound to do so in every instance." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 583 (6th Cir. 2011) (quoting *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011)). Courts may exercise supplemental jurisdiction over any state law claim that "form[s] part of the same case or controversy" as matters arising under original jurisdiction.  28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they derive from a common nucleus of operative facts."  *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004).  This requirement is met when state and federal law claims arise from the same contract, dispute, or transaction. *See, e.g., Carnegie—Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51 (1988); *Capital Park Ltd. Dividend Hous. Ass'n v. Jackson*, 202 F. App'x. 873, 877 (6th Cir. 2006).  Because Plaintiffs' complaint raised federal and state law claims that stemmed from the same transaction—the breach of underlying ERISA obligations—it is proper for us to exercise supplemental jurisdiction over their claims.  Plaintiffs allege that Defendants have breached, and continue to breach, both the Participation Agreement and the Trust Agreement by not complying with the ACA and ERISA.  These claims are preempted by ERISA.

ERISA has one express preemption provision.  It applies equally to all ERISA benefit plans, preempting all state law claims that "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  The Supreme Court has noted that "the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants . . . were free to obtain remedies under state law that Congress rejected in ERISA."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *see also Loffredo v. Daimler AG*, 500 F. App'x 491, 495 (6th Cir. 2012) (citing

to *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) for the holding that ERISA preempts state laws that "provide alternative enforcement mechanisms.")  ERISA specifically provides for remedies for breaches of contract and fiduciary duties. Consequently, any state law claim that grants relief for these breaches "'duplicate[s], supplement[s], or supplant[s] the ERISA civil remedies.'"  *Girl Scouts*, 770 F.3d at 419 (quoting *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999)).

Plaintiffs argue that the breadth of ERISA's preemption provision is limited and that federal courts have repeatedly held that common law breach of contract claims are not preempted under ERISA where the advocate of those claims is neither a "participant" nor "beneficiary" under the statute.  They claim that because Superior Dairy cannot bring an action under ERISA, but remains a party to the Trust Agreement and Participation Agreement, its contract action cannot be preempted.  However, Plaintiffs' argument is unpersuasive.

The Supreme Court has been clear that federal courts must look to the "objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995).  The purpose of ERISA preemption is to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans.  Thus, ERISA preempts state laws that (1) "mandate employee benefit structures or their administration"; (2) provide "alternate enforcement mechanisms"; or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Penny/Ohlmann/Nieman, Inc.* 399 F.3d at 698 (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)).  This has resulted, in limited scenarios, in courts concluding that breach of contract claims were not preempted by ERISA.

However, in each such case, the conduct at issue did not actually relate to the ERISA plan in question.  *See, e.g.*, *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (finding that a breach-of-contract claim was not preempted where the conduct at issue was unrelated to the benefits plan but was related to an employment contract); *Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir. 1999) (only where "an ERISA plan's relationship with another

entity is not governed by ERISA, it is subject to state law"); *Gerosa v. Savasta & Co.*, 329 F.3d 317, 330 (2d Cir. 2003) (concluding that ERISA does not preempt plan's state law claim against an actuary which resulted in severe underfunding of the ERISA plan); *Ariz. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 724 (9th Cir. 1997) (concluding that a plan could bring a state law claim for breach of custodial agreement against a bank as non-fiduciary service provider); *Coyne & Delany Co.*, 98 F.3d at 1466, 1472 (holding that state malpractice claims against insurer for negligently failing to obtain replacement insurance plan was not preempted); *Airparts Co. v. Custom Benefit Servs.*, 28 F.3d 1062, 1066 (10th Cir. 1994) (concluding that trustee's common law suit against outside financial consultant is not preempted).

In contrast, Plaintiffs' contract claims present a mere duplication of their ERISA arguments. In order to adjudicate the breach of contract claim, we would inevitably be evaluating whether or not any provision of ERISA was violated. It is impossible, therefore, to conclude that Plaintiffs' breach of contract action is in any way distinguishable from their ERISA claims. Put another way, there is no way for us to resolve Plaintiffs' contract claims without doubly reviewing their ERISA claims. Engaging in such analysis would be duplicative and thus we find the state law claims preempted.[6]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[6]To escape this conclusion the district court recast Plaintiffs' arguments as challenges to either ERISA or the ACA and found that Plaintiffs failed to exhaust their administrative remedies. Both parties brief the issue to great length. However, we decline to recast Plaintiffs' argument, instead taking them at their word, as expressed by their briefing, and do not address the matter of exhaustion.